**Gary APANEWICZ, individually and trading as Gary's Auto and Truck Repair**

v.

**GENERAL MOTORS CORPORATION and Ford Motor Company and Chrysler Corporation and American Motors Corporation.**

**Civ. A. No. 76–3281.**

United States District Court, E. D. Pennsylvania.

Oct. 10, 1978.

Mitchell A. Kramer, Steven Kapustin, Kramer & Salus, Philadelphia, Pa., for plaintiff.

Edward W. Mullinix, Ira P. Tiger, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for General Motors Corp.

Matthew Broderick, Robt. C. Heim, Dechert Price & Rhoads, Philadelphia, Pa., for Ford Motor Co.

Robert S. Ryan, Michael Floyd, Drinker Biddle & Reath, Philadelphia, Pa., for Chrysler Corp. and American Motors Corp.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff Gary Apanewicz, individually and trading as Gary's Auto and Truck Repair, commenced this action under 15 U.S.C. § 15 (1976) against defendants General Motors Corporation, Ford Motor Company, Chrysler Corporation, and American Motors Corporation for treble damages for injuries sustained as a result of defendants' alleged violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 (1976), and for injunctive relief. Plaintiff has moved for maintenance of a class action.

Gary's Auto and Truck Repair is a sole proprietorship located at 3810 Kensington Avenue, Philadelphia, Pennsylvania. Plaintiff operates his business in a leased triangular shaped garage of approximately 5,500 square feet that is equipped with two spray booths for painting cars and with three lifts for elevating cars to facilitate work underneath. The service area can accommodate approximately fifteen automobiles. At the time of his deposition, Mr. Apanewicz employed four mechanics at his shop. Plaintiff's business activities include general automotive repairs, bodywork, and towing. Plaintiff estimates that approximately 60 percent of his work involves repairing damage sustained by automobiles in collisions. (Apanewicz Deposition at 38) (hereinafter cited as A. Depo.). Because of plaintiff's counsel's instructions that his client not answer questions during his deposition pertaining to the financial condition of Gary's Auto and Truck Repair or to his own personal finances, that information is not before us.

Plaintiff's allegations of Sherman Act violations focus on the defendants' practices regarding the sale and distribution of "crash parts." Plaintiff's complaint defines crash parts as

those parts which tend to be damaged and require replacement because of automobile collisions. Crash parts include fenders, grills, bumpers, hoods, deck lids, doors, quarter panels, rear end opening panels, fender and rear end caps, tail gates, radiator supports and shrouds, and mouldings, including inner and outer panels and all components of these products as well as all parts necessary to attach the aforesaid to the bodies of automobiles and light trucks.

Complaint ¶ 10. At his deposition plaintiff listed other items in the category of crash parts, including headlights, glass, and bulbs. (A. Depo. 91–93).

Plaintiff alleges that all crash parts are produced either by or for defendants and that defendants have for some time maintained a monopoly over the distribution of these parts. Complaint ¶ 12. According to plaintiff, the defendant automobile manufacturers sell crash parts exclusively to their dealers who, in turn, wholesale them to repair shops such as plaintiff's. Because of this distribution system, plaintiff alleges, independent body shops must frequently pay more for such parts than do the defendants' dealers, with whom plaintiff alleges the independent shops compete. Complaint ¶¶ 14, 15.

Plaintiff contends that defendants' acts in violation of the antitrust laws consisted of:

a. Refusing to sell crash parts directly to plaintiff and the class;

b. Adopting a method of distribution which substantially restrains trade in the distribution, wholesaling, and installation of the crash parts;

c. Acting in concert with their franchise dealers so as to substantially restrain competition in the distribution,

wholesaling and installation of the crash parts;

d. Restraining competition in the wholesaling of the crash parts through utilization of disparate wholesaling incentives;

e. Maintaining a method of distribution which provides defendants with an unfair competitive advantage in the sale to their dealers of parts available from alternate sources;

f. Disseminating to defendants' franchise dealers' [sic] lists which suggest the prices at which the relevant parts should be sold to installers and to members of the consuming public;

g. Monopolizing or attempting to monopolize trade and commerce in the distribution, wholesaling, and installation of crash parts market; and

h. Fixing, raising, maintaining and stabilizing the prices for crash parts.

Complaint ¶ 17.

Plaintiff has moved, pursuant to Federal Rule of Civil Procedure (Fed.R.Civ.P.) 23, for an order that this suit is maintainable as a class action.[1] He describes the class he seeks to represent as consisting of

all independent body shops in the United States, that is, those who engage in the repair of automobile and truck bodies and parts thereof who purchase crash parts . . . , but who are not authorized dealers of defendants and who have sustained damages as a result of the conspiracy and arrangements alleged [in the complaint].

Complaint ¶ 4. It is further stated that the class competes with defendants' dealers in installing crash parts. Complaint ¶ 14. Plaintiff estimates that there are approximately 30,000 class members.

*RULE 23 REQUIREMENTS*

In order for a case to be maintained as a class action, it is necessary that the requirements of Fed.R.Civ.P. 23(a) be satisfied. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 246 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). The burden is on the party who desires to utilize the class action mechanism to show that he has met those requirements. 3B Moore's Federal Practice ¶ 23.02–2, at 23–96 (2d ed. 1978). Implicit in the language of Rule 23 ("One or more members of a class may sue or be sued as representative parties . . .") are the underlying requirements that, for an action to be maintained on a class basis, there must, in fact, be a class capable of definition with some degree of concreteness, *Rappaport v. Katz*, 62 F.R.D. 512 (S.D.N.Y. 1974); *Developments in the Law—Class Actions*, 89 Harv.L.Rev. 1318, 1477 (1976), and that the class representative must be a member of the class that he seeks to represent. *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); 3B Moore's Federal Practice ¶ 23.04[2], at 23–120 (2d ed. 1978). We note initially that we have serious reservations about the degree to which plaintiff has been able to define his class. The definition of "all independent body shops in the United States, that is, those who engage in the repair of automobile and truck bodies and parts thereof who purchase crash parts," for example, provides no guidance as to the magnitude of body repair work that an enterprise need engage in to be a member of the class, nor as to what an appropriate level would be for fixing class boundaries. Plaintiff has stated that body repair work comprises approximately 60 percent of his business, but there may well be numerous establishments that do some bodywork, but for whom this accounts for a relatively small portion of their overall business. The resolution of this issue would be particularly significant if the suit were permitted to be maintained as a class action under Rule 23(b)(3), with the concomitant requirement of notice to all

---

1. In his motion plaintiff moves generally for a determination "that this case is maintainable as a class action." In his complaint, however, plaintiff alleges that he represents a class as defined by Rule 23(a), (b)(2) and (b)(3). In their memoranda the parties have addressed the issues relevant to those subsections, and the motion will be treated as one for maintenance of a class under either or both subsections 23(b)(2) and (b)(3).

class members. Because we find that other grounds preclude permitting this case to be maintained as a class action at this time, however, it is not now essential to resolve this question.

■ The question of the named plaintiff's membership in the class is related to his standing. Defendants have challenged both plaintiff's class membership and his standing under Section 4 of the Clayton Act, 15 U.S.C. § 15 (1976). Our doubts as to the definition of the class do not go, however, to whether plaintiff is a member of the class he attempts to represent, but rather to plaintiff's failure to assist the court in determining what the outer boundaries of any such class would be. Assuming such a class could be defined, we do not at this time question that plaintiff would properly be a member. In regard to plaintiff's standing under Section 4, we believe that plaintiff's alleged increases in the cost of doing business, Complaint ¶ 19, are a sufficient basis for Section 4 standing. *Bogus v. American Speech & Hearing Ass'n*, 582 F.2d 277, 285 (3d Cir. 1978).

Rule 23(a) requires plaintiff to show that: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). These mandatory requirements must be met before the court decides under which subsection of Rule 23(b), if any, the action can be maintained. *Wetzel, supra*, 508 F.2d at 246.

A. *Numerosity*

The numerosity issue has not been seriously contested in this case. Plaintiff has met his burden here.

B. *Common Questions*

■ Defendants contend that plaintiff's claims are "so ill-defined as to preclude granting of his motion." Defendants' Memorandum at 25. This concern raises the question whether there are common questions of law or fact, for if the legal theories that underlie a case are not defined with sufficient clarity, it is impossible to address the requirement of commonality. *Kelly v. General Motors Corp.*, No. 73–51 (E.D.Pa. Aug. 1, 1974). Rule 23(a)(2), however, does not require that all questions of law or fact be common, or even that common questions predominate. It merely requires that common questions exist. *Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n*, 66 F.R.D. 581, 586 (E.D.Pa. 1975). In this regard, it has been noted that "Antitrust, price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *In Re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322, 335 (E.D.Pa.1976). We find that plaintiff has succeeded in identifying sufficient common questions of law or fact to meet his burden in this regard. Specifically, questions of a horizontal or vertical conspiracy will be common to the entire class. *See City of Philadelphia v. Emhart Corp.*, 50 F.R.D. 232 (E.D.Pa.1970); *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452 (E.D.Pa. 1968). As Judge Fullam noted in *Philadelphia Electric Co., supra*, plaintiff need not prove the conspiracy in all its ramifications before being permitted to maintain a class action. In fact, inquiry into the merits is inappropriate when the court is considering a motion to maintain the suit as a class action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Steinmetz v. Bache & Co.*, 71 F.R.D. 202, 204 (S.D.N.Y.1976). Therefore, our holding in this regard is only that plaintiff has established the existence of common questions of fact or law sufficient to meet his burden under Rule 23(a)(2). *See* 3B Moore's Federal Practice ¶ 23.06–1 (2d ed. 1978). We intimate no opinion at this time as to whether such questions predominate. *See* Fed.R.Civ.P. 23(b)(3).

C. *Typicality*

Defendants contend that plaintiff has not shown that his claims are typical of those of

the class. Defendants' assertions relate to their belief that the plaintiff has no substantive claim, and that the class may be too heterogeneous to permit a finding of typicality. Plaintiff contends that his claims, like those of the class, arise from the purchase of crash parts, and that he shares co-extensive interests with the class. The requirements of Rule 23(a)(3) have been likened to the requirement of Rule 23(a)(2) that common questions exist, and to the requirement of Rule 23(a)(4) that there be no adverse interests between plaintiff and the class. 3B Moore's Federal Practice ¶ 23.06–2, at 23–186 to 23–189 (2d ed. 1978). Although we have expressed some doubt as to the degree to which plaintiff has succeeded in defining the class in this case, we are not convinced that there is any antagonistic interest between plaintiff and a properly defined class,[2] or that his claims would be atypical. We will therefore assume that plaintiff has met his burden on this point.

### D. *Adequacy of Representation*

■ Rule 23(c)(3) provides that a judgment in a class action shall include all members of a class, with the exception of those members of a 23(b)(3) class who have requested exclusion. Fed.R.Civ.P. 23(c)(3). The significance of this provision has not escaped legal commentators:

> The binding effect of all class action decrees raises substantial due process questions that are directly relevant to Rule 23(a)(4). If the absent members are to be conclusively bound by the result of an action prosecuted or defended by a party alleged to represent their interests, basic notions of fairness and justice de-

mand that the representation they receive be adequate.

7 Wright and Miller, Federal Practice and Procedure § 1765 at 617 (1972) (hereinafter cited as Wright and Miller). In addition to being a requirement of Rule 23 itself, adequacy of representation is necessary to insure that due process is not offended. Comment, *The Importance of Being Adequate: Due Process Requirements in Class Actions Under Federal Rule 23*, 123 U.Pa.L. Rev. 1217, 1224 (1975). The prerequisites for a finding of adequacy of representation have been summarized by the Third Circuit: "that the representatives and their attorneys will competently, responsibly and vigorously prosecute the suit, and that the relationship of the representative parties' interests to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). We will assume that plaintiff has met his burden of demonstrating that there is neither antagonism nor divergence of interests between himself and other members of the class he seeks to establish.[3] We believe that plaintiff's counsel is meet for the tasks that this suit demands. We do not believe, however, that plaintiff has met his burden of showing that he will properly fulfill his role as named plaintiff to prosecute the suit competently and vigorously, thereby assuring that the class is adequately represented.

■ We realize that there is no requirement that a plaintiff be the best of all possible plaintiffs. *See* 7 Wright and Miller

---

**2.** *See* note 3 *infra.*

**3.** Because we deny plaintiff's motion on other grounds, it is not necessary to determine if there are any antagonistic interests or divergent goals between plaintiff and other potential class members. For purposes of this opinion, therefore, we will assume that plaintiff has met his burden on this point. We note, however, that at least one possible divergence within the class may exist. It appears on the record that plaintiff has only a limited amount of storage space in his establishment. (A. Depo. at 32). There is no intimation that, were defendants to

sell crash parts to entities other than their dealers, plaintiff would himself care to become a wholesaler of these parts. This is not necessarily true of other members of the class. A possible conflict may therefore exist between plaintiff and other class members who desire to become crash parts wholesalers. We do not decide this issue at this time, but we note further that to the extent this problem may exist, it might be possible to remedy it by designating appropriate subclasses, represented by appropriate plaintiffs, under Rule 23(c)(4).

§ 1765 at 620. Nor do we seek to impose such a rule in this case. Rather, we believe that "what constitutes adequate representation is a question of fact that depends on the circumstances of each case," *id.* § 1765 at 622, and that in this case Mr. Apanewicz has failed, for the reasons that are discussed *infra*, to meet his burden of demonstrating that he will adequately represent the class.

Aside from discussions of the competence of counsel and the possibility of antagonistic interests, adequacy of representation has been relatively neglected by legal commentators.[4] It has been noted, however, that

Quality of representation embraces both the competence of the legal counsel of the representatives and the stature and interest of the named parties themselves. The general standard appears to be that the representatives must be of such a character as to assure the vigorous prosecution or defense of the action so that the members' rights are certain to be protected. Thus courts have looked to factors such as the representatives' honesty, conscientiousness, and other affirmative personal qualities.

7 Wright and Miller § 1766 at 632–34. Relying in part on this language, Judge Muir denied a motion to maintain an action as a class suit on the basis of adequacy of representation in *In re Goldchip Funding Co.*, 61 F.R.D. 592 (M.D.Pa.1974). We believe that Judge Muir's reasoning is a classic example of a trial judge exercising his duty to protect absent class members.[5] The judge stated:

In my view, facts regarding the personal qualities of the representatives themselves are relevant, indeed necessary, in determining whether "the representative parties will fairly and adequately protect the interests of the class." F.R.Civ.P. 23(a)(4). Because absent members of the class would be conclusively bound by the results obtained by these representatives and their attorneys, due process requires that they be more than pro forma representatives. Cf. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). The class is entitled to more than blind reliance upon even competent counsel by uninterested and inexperienced representatives. A proper representative can offer more to the prosecution of a class action than mere fulfillment of the procedural requirements of Rule 23. He can, for example, offer his personal knowledge of the factual circumstances, and aid in rendering decisions on practical and non-legal problems which arise during the course of litigation. An attorney who prosecutes a class action with unfettered discretion becomes, in fact, the representative of the class. This is an unacceptable situation because of the possible conflicts of interest involved. See *Graybeal v. American Savings and Loan Association*, 59 F.R.D. 7 (D.D.C.1973).

61 F.R.D. at 594–95. Judge Muir's analysis has been both followed and rejected by other courts. *Compare Seiden v. Nicholson*, 69 F.R.D. 681, 688–89 (N.D.Ill.1976), *with Chevalier v. Baird Savings Ass'n*, 72 F.R.D. 140 (E.D.Pa.1976). It was recently applied by Judge MacMahon of the Southern District of New York in *Greenspan v. Brassler*, 78 F.R.D. 130 (S.D.N.Y.1978). Judge MacMahon cited the plaintiffs' limited personal knowledge of the facts underlying the suit in his denial of the motion to maintain the suit as a class action on adequacy of representation grounds.[6] We are aware of Chief Judge Lord's concerns, expressed in *Chevalier, supra*, that imposing too high a burden on the class representative, particularly in a complicated antitrust case, could render the class action device impotent. There is real basis for this concern, and for this reason we do not believe that permis-

4. *See Developments in the Law—Class Actions*, 89 Harv.L.Rev. 1318, 1471 n. 91 (1976).

5. For a brief discussion of the trial judge's responsibility in this regard, *see* Comment, *The Importance of Being Adequate: Due Process Requirements in Class Actions Under Federal Rule 23*, 123 U.Pa.L.Rev. 1217, 1239–40 (1975).

6. The judge in *Greenspan* also denied the plaintiffs' motion for their failure to meet the requirements of Rule 23(a)(3). 78 F.R.D. at 132.

sion to maintain a suit as a class action should be denied lightly on these grounds. We do not expect, for example, that a plaintiff be conversant with sophisticated legal doctrines concerning the antitrust laws. Nonetheless, we believe that in this case plaintiff has failed to meet that standard by which we must judge his motion.

Plaintiff asserts that defendants refuse to sell crash parts directly to members of the class. Complaint ¶ 17a. He has never attempted to purchase parts from any of the defendants, however. (A. Depo. at 106, 175). Plaintiff states that the class he seeks to represent competes with defendants' dealers. Complaint ¶ 14. He is unclear, however, as to whether he himself competes directly with any such dealer. *Compare* A. Depo. at 57–59, 87 *with* A. Depo. at 88, 157. In fact, he is uncertain which dealers do or do not have body shops with which he could compete. (A. Depo. at 161). Plaintiff has demonstrated no personal knowledge of the conspiracy alleged in the complaint. (A. Depo. at 118). At his deposition plaintiff was requested to mark a copy of his complaint to show those portions of which he had personal knowledge. (A. Depo. at 123–24, A. Depo. Exhibit D–3). He has neither claimed nor demonstrated familiarity with the vast majority of material facts in this case. We believe this lack of familiarity renders plaintiff unable to represent his class adequately and vigorously by assisting his lawyer to prove their case.

Plaintiff contends that this lack of familiarity is not fatal to his ability to represent the class adequately because he "has read the complaint prior to filing and is familiar with some of its contents," Plaintiff's Reply Memorandum at 20, and because plaintiff does have experience in the crash parts repair business and has shown an interest in this law suit. Moreover, plaintiff believes that if defendants' contentions regarding plaintiff's lack of knowledge had merit, defendants would have moved to compel answers under Fed.R.Civ.P. 37(a)(2). Plaintiff's Reply Memorandum at 10. We do not believe that plaintiff's experience in operating a body shop necessarily qualifies him as

an adequate class representative. The burden of convincing us that he is so qualified lies with the plaintiff; therefore, reliance on defendants' failure to move to compel is misplaced.

■ In addition to plaintiff's lack of knowledge of the facts of this case, we believe that plaintiff has failed to demonstrate sufficiently that he possesses the financial wherewithal and the commitment to employ it as necessary in order to represent a class adequately. We recognize that plaintiff has stated that he is willing to pay all costs of this suit. (A. Depo. at 19). It is uncertain, however, whether plaintiff based this statement on an understanding of the possible expense of notice if the class were to be maintained under Rule 23(b)(3). We do not believe that our inquiry must stop with plaintiff's bald assertion. There is, undoubtedly, a link between a plaintiff's ability and willingness to bear the costs of an action and the vigor with which the action can be prosecuted. *See* Kaye & Sinex, *The Financial Aspect of Adequate Representation Under Rule 23(a)(4): A Prerequisite to Class Certification?*, 31 U.Miami L.Rev. 651, 653 (1977). This financial burden can be expected to increase with the complexity of the case and the number of persons to be represented. *Id.* at 660. For this reason, some courts have inquired into a party's ability to bear the costs of class representation as that related to the party's ability to represent adequately, and where either such an ability or willingness has not been shown, class representation has not been permitted. *See e. g., National Auto Brokers Corp. v. General Motors Corp.*, 376 F.Supp. 620 (S.D.N.Y.1974), *aff'd on other grounds*, 572 F.2d 953 (2d Cir. 1978); *Ralston v. Volkswagenwerk, A.G.*, 61 F.R.D. 427 (W.D.Mo.1973); *P.D.Q. Inc. v. Nissan Motor Corp.*, 61 F.R.D. 372 (S.D.Fla.1973). The sensitiveness of this inquiry should not be overlooked, however. As the Tenth Circuit cautioned in *Sanderson v. Winner*, 507 F.2d 477, 479 (10th Cir. 1974), *cert. denied*, 421 U.S. 914, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975), "Ordinarily courts do not inquire into the financial responsibility of litigants.

We generally eschew the question whether litigants are rich or poor. Instead, we address ourselves to the merits of the litigation." The court continued to note, however, that "the class action is unique and we see the necessity for the court to be satisfied that the plaintiff or plaintiffs can pay the notice costs, . . ." *Id.* at 480. In view of the important interests at stake—assuring adequate representation while not creating insurmountable barriers to the vindication of legal rights—we agree with the suggestion that "[b]ecause of the variants such as class size and complexity of litigation, the examination of financial capability should be taken on a case by case basis, without rigid rules defining the amount necessary to sustain certification on the adequate representation issue." Kaye & Sinex, *supra*, 31 U.Miami L.Rev. at 661. The only relevant consideration is whether plaintiff has come forward with sufficient information to assure the court that he will adequately represent the class in this regard. In this case plaintiff has not met that burden. At his counsel's instruction, plaintiff at deposition refused to answer questions that would enable us to know whether plaintiff has an appreciation of the costs of notice that might be involved and if some arrangements for bearing that and other costs have been made. (A. Depo. at 18–20). We neither set a dollar limit nor prescribe a method of financing. Either action, we believe, would be inappropriate. In this case, however, plaintiff's failure to provide sufficient information upon which we can evaluate his potential representation in this regard buttresses our earlier conclusion that plaintiff has not satisfactorily demonstrated that he will adequately represent this class.

■ It may well appear anomalous, and more that a little disingenuous, that defendants should strenuously challenge the adequacy of their adversary's ability to represent a proposed class adequately. Obviously a court cannot permit a decision on this question to be influenced by any interest of the defendants. A court, however, cannot abdicate its responsibility to weigh the question whether a would-be class representative can adequately represent the class. If he cannot, the class action may not be maintained as proposed. This decision, if reached, must reflect the court's opinion that the interests of absent class members risk prejudice if the proposed representation is approved. That is our finding in this case.

Our decision is intended in no way as a personal reflection on Mr. Apanewicz. We hold only that because of his failure to demonstrate that he possesses adequate knowledge of the facts of this case, and because of his failure to show that he can and will bear certain expenses in the action, he has not met his burden of demonstrating that he will fairly and adequately protect the interests of the class.

## THE REQUIREMENTS OF RULE 23(b)(3)

Because of our conclusion that plaintiff has not met his burden of assuring the court that he will adequately represent the interests of absent class members, it is not necessary to address the requirements of Rule 23(b) at this time. In view, however, of our power to alter or amend our order regarding class maintenance before a decision on the merits, Fed.R.Civ.P. 23(c)(1), we feel it is appropriate to mention that, notwithstanding our finding that plaintiff's suit presents questions of law or fact common to the class, we retain doubts as to whether such questions predominate over questions affecting only individual members. Fed.R.Civ.P. 23(b)(3). Should plaintiff attempt, at some time before a decision on the merits, to cure the defects discussed in this opinion and to renew his motion to maintain this action as a class action, we believe that further definition of the issues will be necessary to enable us to answer the questions raised by Rule 23(b)(3), including, for example, whether the problems involved in proving damages might outweigh the advantages of a class suit, perhaps making advisable a class limited to the determination of liability. *See Bogosian v. Gulf Oil Corp., supra* at 456. Moreover, it would be necessary to define more concretely the class at that time.

Plaintiff has at no time intimated that this case would not proceed on an individual basis if the motion to maintain it as a class suit were denied. (A. Depo. at 212–14). The case may now, of course, proceed on that basis.