**450**

Jerry G. MOORE, an Individual, Gordon Hodnett, an Individual, and on behalf of all others similarly situated, Plaintiffs,

v.

The WESTERN PENNSYLVANIA WATER COMPANY, a Pennsylvania Corporation, Defendant.

Civ. A. No. 75–1522.

United States District Court, W. D. Pennsylvania.

Jan. 20, 1977.

Carl Max Janavitz, W. Robert McClenahan, Janavitz, Janavitz & Kanfoush, Pittsburgh, Pa., for plaintiffs.

Robert A. Jarvis, Beck, McGinnis & Jarvis, Pittsburgh, Pa., James A. Matthews, Jr., Allen J. Gross, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

TEITELBAUM, District Judge.

This is a purported class action for racially-based employment discrimination brought by two black employees who had been on layoff from defendant, the Western Pennsylvania Water Company.

Named plaintiff Moore was employed in a semi-skilled capacity by the defendant company on March 5, 1973, and continued in such employment until he was laid off on February 9, 1974. Named plaintiff Hodnett was similarly employed in a semi-skilled capacity by defendant from August 23, 1973 until his layoff on February 9, 1974.

Plaintiffs filed written charges of racial discrimination with the Equal Employment Opportunity Commission within 90 days of the occurrence of the layoff complained of, and commenced the instant action on November 26, 1975, within 90 days of notification by the EEOC of their "right to sue" in the Federal District Court.

Essentially, plaintiffs allege that the defendant company's hiring and layoff practices are racially discriminatory because the implementation and operation of a last hired/first fired seniority system has a "disparate effect" on black persons in the matter of layoffs. A bit more specifically, plaintiffs assert that a certain limited number of black persons were hired by defendant in a short period of time "to appease changing racial attitudes," but with knowledge by defendant that they could be laid off first at any time. Thus, plaintiffs submit, the initial hiring was "but a cruel deceptive device," and the company's alleged last hired/first fired procedure a system effecting invidious discrimination. Accordingly, plaintiffs now seek injunctive relief and damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and under 42 U.S.C. § 1981.

The merits of plaintiffs' allegations of racial discrimination in employment are not presently before the Court. The only matter now before me is named plaintiffs' motion for class action determination under Rule 23(c) of the Federal Rules of Civil Procedure.

By their motion, plaintiffs seek certification of a Rule 23(b)(2) or (b)(3) plaintiff class "composed of black persons who are employed or might be employed by . . [defendant] at its Western Pennsylvania water utility facilities located in or about the City of Pittsburgh, County of Allegheny and Commonwealth of Pennsylvania . . [and] who have been and continue to be or might be adversely affected by the practices complained of herein."

It is of course axiomatic that whether grounded on 23(b)(2) or 23(b)(3), plaintiffs' motion for class certification must fail absent a finding by the Court that the class action prerequisites set forth in Rule 23(a)[1] are satisfied herein. *E. g., Wetzel v. Liberty Mutual Insurance Company,* 508 F.2d 239 (3d Cir. 1975). As explained below, I believe such a finding is precluded in this case by plaintiffs' failure to satisfy the numerosity requirement of Rule 23(a)(1).

---

1. F.R.Civ.P. 23(a) provides as follows: "Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

## I

█ We emphasize at the outset that in both their complaint and "motion for allowance of a class action," plaintiffs indicate that they seek to represent a class composed only of present and future black employees of defendant. Nowhere in their complaint or motion do plaintiffs claim or seek to represent any other group of persons. However, the Court has not failed to recognize that in their brief in support of class action determination, plaintiffs argue for certification of a class that would also include past black employees of the defendant company. Defendant of course objects to the belated inclusion of this group of past black employees within the proposed class.

It need hardly be stated that plaintiffs should not now be permitted to informally amend their definition of the alleged class so as to include individuals they did not seek to represent in their motion for allowance of a class action. See Local Rule 34, United States District Court for the Western District of Pennsylvania. However, plaintiffs' brief makes it plain that their reference to past employees relates only to seven black employees laid off by the defendant company. Inasmuch as inclusion of these individuals as members of the purported class does not alter the Court's decision in this matter, we assume for present purposes that the seven laid off black employees fall within the perimeters of the class definition set forth in plaintiffs' complaint and motion for class certification.

## II

█ It is undisputed that there are presently five black employees working for the defendant company in or about the City of Pittsburgh.[2] In addition (as previously noted), seven black employees have been laid off, but will here be considered within the group of "present employees" sought to be represented by plaintiffs. Such "present employees" thus number a total of 14, counting named plaintiffs themselves.

I do not think it requires extended analysis to conclude that 14 potential class members are insufficient to satisfy the numerosity requirement of Rule 23(a)(1).

The burden is on plaintiffs to show not only that membership in the purported class is so large as to warrant class action treatment, but also that joinder of all members is impracticable. See *Rossin v. Southern Union Gas Company,* 472 F.2d 707 (10th Cir. 1973); *Mason v. Calgon Corp.,* 63 F.R.D. 98 (W.D.Pa.1974). Plaintiffs have failed to carry this burden. The record is utterly devoid of anything to indicate that joinder of 14 individuals is impracticable in these particular circumstances; and, as a general proposition, reported cases in this Circuit and elsewhere clearly indicate that 14 potential members are too few to satisfy the numerosity prerequisite to class action treatment. *E. g. Giordano v. Radio Corporation of America,* 183 F.2d 558, 561 (3d Cir. 1950) (with regard to 16 individuals, "it could hardly be held that they constitute a class 'so numerous as to make it impracticable to bring them all before the court' "); *Mason v. Calgon Corp., supra* at 106 (with regard to a proposed class which could include as many as 23 black persons, "the Plaintiff has not satisfied the first prerequisite to a class action contained in Rule 23(a)(1) . . . ."); *Bowen v. Banquet Foods Corp.,* 12 FEP Cases 1345 (E.D.Mo. 1975) ("[14 possible class members] is insufficient to meet the requirements of Rule 23(a)"); *McClinton v. Turbine Support,* 68 F.R.D. 236, 238 (W.D.Tex.1975) (" . . . the Court will assume that the size of the class is twenty-nine individuals. This potential maximum size is not so large as to render joinder impracticable"); *Causey v. Ford Motor Co.,* 8 EPD ¶ 9700, 8 FEP Cases 353 (M.D.Fla.1974) ("this class contains approximately 10 persons and is thus too small to justify the maintenance of a class action"); *Lee v. Macon County Board of Education,* 498 F.2d 1090 (5th Cir. 1974) (eight individuals in class not so numerous that joinder is impracticable).

2. Defendant presently employs a total of 196 persons.

## III

It thus would seem apparent that, without more, plaintiffs' motion must fail under Rule 23(a)(1). Plaintiffs, however, attempt to circumvent this result and hurdle the numerosity obstacle to class treatment by defining the proposed plaintiff class so as also to include potential future black employees—that is, those black persons who might be employed by the defendant company at some time in the future.

There is no doubt that a class defined to include all future black employees of the company, as well as its 14 "present" black employees, would be vast; indeed, it would appear to encompass every physically and mentally capable black individual of working age or younger in the Pittsburgh area. The problem here is not one of mere numerosity.

■ As defendant has observed, the future black employees plaintiffs seek to represent "comprise an amorphous, phantom group, incapable of identification" in terms of both individuals and numbers.[3] By definition, such a group does not exist in any but the most abstract sense. For this reason, both logic and policy dictate that the purported class cannot be defined to include future employees.

In *Giordano v. Radio Corporation of America, supra* at 561, the Court of Appeals for the Third Circuit indicated that a class suit may not be maintained if the purported class is "too ill-defined," stating that:

> "In a true class suit the plaintiffs stand in judgment for the class and a judgment for or against the plaintiffs benefits or binds each member of the class personally under the principles of res judicata. The members of a class must, therefore, be capable of definite identification as being either in or out of it."

Similarly, in *O'Bannon v. Merrill, Lynch, Pierce, Fenner and Smith,* 10 FEP Cases 1261 (W.D.Pa.1975), Judge McCune of this Court refused to allow the inclusion of future female job applicants in a class because "no one knows who these women may be." This result would seem a matter of common sense; but it also is bottomed on fundamental policy considerations.

In his concurring opinion in *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1126 (5th Cir. 1969), Judge Godbold admonished that ". . . . an over-broad framing of the class may be so unfair to the absent members as to approach, if not amount to, deprivation of due process." That admonition is clearly pertinent in the context of the case *sub judice.* Here, future black employees would derive no benefit from their inclusion in the proposed class, but could suffer substantial detriment to their legal rights.

Obviously, the only relief that could inure to the benefit of future employees in this action would be injunctive or declaratory relief regarding specific, allegedly unlawful employment practices of the defendant company. Such relief automatically would inure to the benefit of future black employees even if not included in the purported class. On the other hand, if named plaintiffs are unsuccessful in their suit, unknown and unidentified future employees, if included in the proposed class, would suffer the adverse consequences of a judgment against them. Thus, inasmuch as future black employees could receive no greater relief by their inclusion in the asserted class, policy dictates their exclusion so that they may avoid the risk of a judgment in this action which might foreclose their right to challenge defendant's employment practices in the future. See *e. g., Harvey v. Stein Printing Company,* 9 FEP Cases 88 (N.D.Ga.1973)[4]; *Freeman v. Motor Convoy,*

---

3. For this reason alone, plaintiffs could not be permitted to rely upon this portion of the proposed class to satisfy the numerosity requirement of 23(a)(1) even if the Court were to decide that future employees are properly included in the class. *Piva v. Xerox Corp.,* 70 F.R.D. 378, 388 (N.D.Cal.1975).

4. In *Harvey, supra,* a class action in which the plaintiffs sought to represent future black employees, the Court stated that: ". . . this court rejects the proposition that prospective black employees may be included in the class. If they were includable, then an unfavorable

*Inc.,* 68 F.R.D. 196 (N.D.Ga.1974); *Hines v. D'Artois,* 383 F.Supp. 184 (W.D.La.1974)[5]; *Barrett v. U. S. Civil Service Commission,* 69 F.R.D. 544 (D.C.D.C.1975).[6]

■ A final point should be noted. Where, as here, the class action vehicle is not necessary to achieve the desired relief for the proposed class, and future employees will derive no additional potential benefit by membership in any class, the "costs" of class treatment—in terms of the complexities inherent.in class action litigation and the concomitant impact on judicial efficiency and economy—are unjustified. Indeed, absent a compelling reason for class treatment, invocation of the class action mechanism on the basis of the inclusion of future black employees in this case would be in derogation of the increasingly important public policy promoting judicial efficiency and economy.

For the reasons set forth above, I find that future black employees of defendant are not properly includable within the plaintiff class proposed in the instant case. We thus are left with a proposed class comprised of defendant's 14 "present" black employees. As previously explicated, I find that such a class fails to meet the numerosity prerequisite to class treatment specified in Rule 23(a)(1). Accordingly, plaintiffs' motion for class action determination will be denied.

An appropriate Order will be entered.

disposition of a litigation would bind them and prevent redress of discrimination not yet inflicted. If they are not includable, however, injunctive relief, if granted, would inure to their benefit."

5. In *Hines, supra,* in which the plaintiffs sought to represent prospective job applicants, the court, in denying class action determination, noted that: ". . . if plaintiffs are successful in any of their demands, the relief accorded them will necessarily result in correction of the evils by which they are plagued, and inure to the benefit of the entire black community of which they are members. It simply is not necessary that this suit proceed as a class action." *Id.* at 188.

6. In *Barrett, supra,* the plaintiffs challenged, *inter alia,* the regulatory scheme of the Civil

Service Commission, and sought certification of a proposed class comprised of all those who file complaints of systemic discrimination against federal agencies. In denying certification, the Court stated: "As to the proposed class of all federal employees with respect to the declaratory judgment, the government has made the following point: '[S]uch a class is entirely unnecessary. If plaintiffs are ultimately successful as individuals, the effect of such a decision would automatically run to the benefit of the purported class in that the regulations would be declared invalid.' . . . The Court concurs in defendants' observation . . . The remedy . . . as defendants point out, automatically extend[s] to all federal employees."