**Penny RODE, Plaintiff,**

v.

**EMERY AIR FREIGHT CORPORATION, Defendant.**

Civ. A. No. 76–686.

United States District Court, W. D. Pennsylvania.

Oct. 5, 1977.

Robert N. Hackett, Joan P. Feldman, Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Pittsburgh, Pa., for plaintiff.

Carl H. Hellerstedt, Jr., Thorp, Reed, & Armstrong, Pittsburgh, Pa., for defendant.

### MEMORANDUM OPINION

TEITELBAUM, District Judge.

### FACTS

This case is an alleged class action instituted by the representative plaintiff, who contends that she was refused employment by defendant as a salesperson at defendant's Greater Pittsburgh Airport facility because of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e *et seq.* Plaintiff purports to represent a nationwide class of females categorized in the complaint as follows:

(1) female persons who are now employed, have been employed from July 2, 1965 to the present, or might be employed by the defendant, as salespersons, officials, managers, and clerical workers in its sales force or otherwise;

(2) those females who have unsuccessfully applied for employment from the defendant;

(3) those females who have been discharged by defendant;

(4) those females who have not been promoted by defendant;

(5) those females who would have applied for employment but for the reputation of defendant in the community that defendant denied equal opportunity to females;

(6) those females who will apply and will not be considered for certain jobs because of their sex.

This proceeding is before the Court pursuant to defendant's motion to compel the production of information concerning the financial status of the representative plaintiff. The issue to be decided is whether or not financial data concerning the representative plaintiff in a class action suit is relevant in determining the adequacy of class representation for purposes of Rule 23(a)(4) of the Federal Rules of Civil Procedure.

## DISCUSSION

### "Background"

As a general proposition, it is easily stated that the wealth of litigants should be irrelevant to a determination of legal rights. One of the major advantages of the class action suit was intended to be the increased accessibility to the judicial system for individuals of all income levels. "In our complex modern economic system where a single harmful act may result in damages to a great many people there is a particular need for the representative action as a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." *Escott v. Barchris Construction Corporation,* 340 F.2d 731, 733 (2d Cir. 1965).

While the aforementioned class action ideals have been reasonably realized, a correlative abuse of the class action process has compromised the overall expectations of the creators of Rule 23. The form of this abuse has been the substitution of plaintiff's attorney for the representative plaintiff or the plaintiff class as the real party in interest in class litigation. Inasmuch as the recovery of each class member is often very modest, while the attorneys fees upon victory are very lucrative, it is not surprising that the class action attorney often approaches the litigation with a great deal more zeal than does the representative plaintiff. If it be held that the financial status of a representative plaintiff is not discoverable, then every class action brought under Title VII presents grave problems. By utilizing an indigent class representative the defendant can be assured that any award of costs and attorneys fees at the conclusion of suit under Section 706(k) of Title VII will be meaningless, while at the same time such a representative in no way prejudices either plaintiff's case or his attorneys' potential fee recovery. When combined with the practice of using notice pleadings and alleging an extremely broad class followed by extensive and costly discovery, a defendant is placed in a most precarious position where the nominal plaintiffs are without resources.

The unpleasant dilemma created, therefore, requires an accommodation between the guaranteed right of a litigant or class of litigants, no matter how impecunious, to seek redress of their grievances and the need to regulate the evolving abuse of Rule 23 which threatens to permanently assign the representative plaintiff and class members only a minor role in the cast of class action characters. It is critical that the allegedly aggrieved plaintiffs be reestablished as the focal point of class litigation.

"Controversy *sub judice*"

The financial status of a representative plaintiff is relevant in ascertaining whether the representative adequately and fairly represents the interests of the class as a whole. *Ralston v. Volkswagenwerk, A. G.*, 61 F.R.D. 427 (W.D.Mo.1973); *P. D. Q., Inc. v. Nissan Motor Corp.*, 61 F.R.D. 372 (S.D.Fla.1973); *National Auto Brokers Corp. v. General Motors Corp.*, 376 F.Supp. 620 (S.D.N.Y.1974). As stated in *Ralston, supra* at 434:

> "*Seeking to represent a large group of people as a class representative in a lawsuit is a very heavy responsibility. It should never be undertaken lightly, and the court should allow such representation only upon a firm foundation that the named plaintiffs are willing and financially able to shoulder that burden. . . Inadequate financing threatens the procedural and substantive interests of all members of the class.*"

Without the requested information concerning the financial status of the representative plaintiff, it would be impossible for this Court to properly decide the issue of adequacy of representation under Rule 23(a)(4) as outlined in *Ralston*.

Plaintiff in its brief argues that *Ralston, P. D. Q., Inc.*, and *National Auto Brokers* are inapposite to the case *sub judice* because none of them granted a motion to compel discovery of the representative plaintiff's financial resources where there was an agreement for advancement of costs,[1] nor did they deny class certification solely because of the financial resources of the representative plaintiff.[2] It is acknowledged that plaintiff's observation is correct insofar as it relates to an agreement for the advancement of costs only because no Court has specifically confronted today's precise issue.[3] Additionally, it is of no import that class certification has not been previously denied *solely* because of financial circumstances. The issue addressed is whether or not financial data should be relevant to class certification, not whether such data is conclusive evidence as to certification.

Another factor mitigating in favor of financial disclosure is Section 706(k) of Title VII, which permits an award of attorneys fees to the defendant should it prevail.[4] *United States Steel Corporation v. United States*, 519 F.2d 359 (3d Cir. 1975). This provision would be completely abrogated if financial data of the representative plaintiff were deemed irrelevant. Indigent nominal plaintiffs could bring frivolous class suits without fear of reprisal in the hope of *"blackmailing"*[5] the defendant into

1. We assume that an agreement for the advancement of costs does exist based upon the statements of plaintiff's counsel at page 11 of her brief. An agreement that an impecunious plaintiff will reimburse his attorney for advanced costs can hardly be seriously intended, but the propriety of advancing costs in these circumstances is not being considered here as a factor in determining the scope of discovery.

2. Plaintiff's brief at page 11.

3. It should come as no surprise to plaintiff that the exact issue has not been previously decided. Seldom does *stare decisis* have as the object of its application an identical twin. It would indeed be foolhardy to marshal this Court's finite resources to write an Opinion where the problem was already effectively and authoritatively resolved by another Court.

The case coming nearest to addressing the instant issue is *Guse v. J. C. Penney Co., Inc.*, 409 F.Supp. 28 (E.D.Wis.1976). *Guse* is the only case to possess the dual characteristics of a Title VII class action and an agreement for the advancement of costs, both of which are present *sub judice*. Unfortunately, although *Guse* held that an inquiry into the assets of plaintiff's attorney would be proper under appropriate circumstances, the Court was not presented with the issue of discovery into plaintiff's resources.

4. Although plaintiff argues that defendant has a low probability of success in obtaining attorneys fees because of the need to demonstrate "bad faith" on the part of plaintiff, recent experience with Title VII indicates that such a provision is being effectively utilized. (Cf. *Copeland v. Martinez*, 435 F.Supp. 1178 (D.D.C. 1977) where a federal employee's bad faith in bringing a baseless employment discrimination action under Title VII warranted an award of the government agency's attorneys fees against her.) Thus, while proof of bad faith may be difficult, our decision today refuses to make such proof meaningless.

5. "Any device which is workable only because it utilizes the threat of unmanageable and expensive litigation to compel settlement is not a

232

a settlement. Since a corporate defendant in a class action has potentially extensive liability, the natural reaction is for the defendant to insure against whatever miniscule likelihood of success plaintiff possesses by effecting a settlement. We refuse to emasculate Section 706(k)'s desired objective of penalizing frivolous Title VII suits.

Plaintiff principally relies upon two cases for the proposition that the representative plaintiff's financial status is irrelevant to the maintenance of a class action. *Sanderson v. Winner*, 507 F.2d 477 (10th Cir. 1974); *Sayre v. Abraham Lincoln Federal Savings and Loan Association*, 65 F.R.D. 379 (E.D. Pa.1974). Both cases are inappropriate judicial beacons for this Court to follow in the instant factual context.

Both *Sanderson* and *Sayre* are primarily predicated upon the premise that a defendant has no legitimate concern in whether plaintiff will reimburse his own counsel. However, defendant in the case *sub judice* has a direct interest in whether or not plaintiff will be able to reimburse defendant for *its* attorneys fees as provided by Section 706(k) of Title VII or for costs if defendant should prevail.

■ Additionally, to the extent that either *Sanderson* or *Sayre* can be read to hold that the representative plaintiff's financial status is irrelevant when counsel has agreed to pay the expenses of suit, such a holding must be circumscribed by the *ratio decidendi* of those decisions, which would be inappropriate if applied *sub judice*. A critical factor supportive of the decisions in those cases was the relatively limited size of the classes involved. The Court in *Sanderson* explicitly realized that the factual setting there differed significantly from the situations presented in both *Ralston* and *P. D. Q., Inc.* The Tenth Circuit was careful to point out that both *Ralston* and *P. D. Q., Inc.* maintain viability where the scope of the putative class is large. In distinguish-

ing *Ralston* and *P. D. Q., Inc.*, the Court in *Sanderson* stated one of the significant components of its decision to bar discovery relative to plaintiff's assets:

"We are aware that some lower court decisions have considered the plaintiff's ability to pay as relevant and proper in the present context. (*Ralston & P. D. Q., Inc.*, citations omitted) However, in both of these cases in which antitrust violations were alleged, the plaintiffs sought to represent a class of all new car purchasers in the United States. Thus, there was legitimate concern about the ability of the plaintiffs to successfully lead *a class of this magnitude.* . . . The mentioned considerations are not present here." *Sanderson, supra* at 480. (emphasis added)

The mentioned considerations absent in *Sanderson* are present *sub judice*. While defendant has approximately 2600 employees nationwide, the purported class includes all female applicants as well as females who were dissuaded from applying due to defendant's alleged discriminatory reputation. The class, therefore, would include an almost limitless set of members. Discovery would impose upon defendant the obligation to search extensive personnel files located in each one of their 80 offices in 38 separate states. When the scope of the purported class would impose discovery demands of the magnitude presently possible, the financial status of the representative plaintiff is relevant to class certification. *Sanderson* not only does not forbid such a result, as argued by plaintiff, but actually affirmatively sanctions disclosure in this type of nationwide class action.

CONCLUSION

Where, as here, the attorney has agreed to advance the costs of litigation to the representative plaintiff, a potentially dangerous situation is created because the at-

rule of procedure—it is a form of legalized blackmail . . . .. The distinctions between innocent and guilty defendants and between those whose violations have worked great injury and those who have done little if any harm become blurred, if not invisible. The only sig-

nificant issue becomes the size of the ransom to be paid for total peace." Handler, *The Shift from Substantive to Procedural Innovations in Antitrust Suits* —the 23rd Annual Antitrust Review, 71 Col.L.Rev. 1, 9 (1971).

torney is able to assume primary control over the lawsuit. At any point in time where the desires of the representative plaintiff differ from those of his counsel, the threat of fund revocation, whether express or implied, could serve to coerce the representative plaintiff into complying with his attorney's position. The result of advancing litigation costs is that the Rule 23 responsibility of adequately representing the class becomes entrusted to the attorney rather than the litigant.

Even if it can be shown that the financial means of a representative plaintiff are inadequate to subsidize a nationwide class action, the alternative remedy of limiting the class size is available. *P. D. Q., Inc. supra* at 381. In this manner the advantage of consolidated litigation is reconciled with defendant's right to avoid being harassed or coerced into making a settlement of a questionable claim solely because of the burden of pretrial discovery. *EEOC v. Anchor Continental, Inc.*, 15 F.E.P. 90 (D.C.S. C.1977). Whether or not such an accommodation is an appropriate solution in the instant case, however, must await decision until a later date.

We only hold today that financial data concerning the representative plaintiff in a class action of nationwide scope is relevant in determining the adequacy of class representation for purposes of Rule 23(a)(4). We do not hold that a lack of funding by the representative plaintiff, without more, is sufficient to warrant denial of class certification. "Whether a party adequately represents a class depends on all the circumstances of the particular case." 3B, Moore, Federal Practice, ¶ 23.07[1] (2d Ed. 1974). *An appropriate Order will issue.*

