**Penny RODE, on her own behalf and on behalf of a class of persons similarly situated, Plaintiffs,**

v.

**EMERY AIR FREIGHT, a corporation, Defendants.**

**Civ. A. No. 76–686.**

United States District Court, W. D. Pennsylvania.

Nov. 3, 1978.

John P. Feldman, Gerald S. Lesher, Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Pittsburgh, Pa., for plaintiffs.

Carl H. Hellerstedt, Jr., Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

TEITELBAUM, District Judge.

### FACTS

This case is an alleged class action instituted by the representative plaintiff, who contends that she was refused employment by defendant as a salesperson at defendant's Greater Pittsburgh Airport facility because of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff purports to represent a nationwide class of females categorized in the complaint as follows:

1. female persons who are now employed, have been employed, from July 2, 1965 to the present, or might be employed by the defendant, as salespersons, officials, managers, and clerical workers in its sales force or otherwise;

2. those females who have unsuccessfully applied for employment from the defendant;

3. those females who have been discharged by defendant;

4. those females who have not been promoted by defendant;

5. those females who would have applied for employment but for the reputation of defendant in the community that defendant denied equal opportunity to females;

6. those females who will apply and will not be considered for certain jobs because of their sex.

Defendant previously sought to compel the production of information concerning the financial status of the representative plaintiff, which was granted by Opinion and Order of Court dated October 5, 1977. *Rode v. Emery Air Freight Corp.,* 76 F.R.D. 229 (W.D.Pa.1977). Subsequent discovery disclosed that Penny Rode's total assets did not exceed $5,000 and counsel for the respective parties so stipulated.[1] Defendant has now moved to deny class certification based on inadequacy of representation. Defendant contends that Penny Rode, being unable to bear the ultimate responsibility for either the costs of litigation or the reasonable fees of defense counsel under Section 706(i) of Title VII, if appropriate, is unfit to be a class representative for a suit of nationwide scope.

### DISCUSSION

That the size of plaintiffs' purported class is immense cannot be subject to serious dispute. While defendant employs approxi-

---

1. Conference transcript of April 27, 1978, p. 7.

mately 2600 people in 38 states, the putative class includes not only all female employment applicants nationwide, but also all females who were dissuaded from applying because of defendant's alleged discriminatory reputation. Even though able to devote only a very limited amount of financial backing to the instant litigation in comparison to the anticipated costs, Penny Rode is alleged to be a viable class representative because the law firm representing her has agreed to advance all the costs of litigation. See *Rode, supra,* at 231.

An exhaustive review of applicable case law was undertaken in conjunction with the issue of whether or not financial data concerning Penny Rode was discoverable. *Rode, supra* at 231–233. Having previously addressed those cases at some length, they are now again considered only insofar as reflecting upon Penny Rode's adequacy as a class representative. An examination of such cases results in several observations. First, the usual focus of interest centers around the financial competency of plaintiff's attorney rather than the representative plaintiff. *Sanderson v. Winner,* 507 F.2d 477, 480 (10th Cir. 1974); *Sayre v. Abraham Lincoln Federal Savings and Loan Association,* 65 F.R.D. 379, 383 (E.D.Pa. 1974); *Guse v. J. C. Penney Co. Inc.,* 409 F.Supp. 28, 30 (E.D.Wis.1976). Secondly, the relevancy of Section 706(k) of Title VII, which permits an award of attorneys fees to the defendant should it prevail, remains virtually unexplored. Thirdly, reduction of class size has been viewed favorably as an accommodation between the competing interests of the representative plaintiff with limited financial resources and the defendant who is seemingly compelled to settle out of sheer economic necessity. See *Rode, supra* at 231–232. *P. D. Q., Inc. v. Nissan*

*Motor Corp.,* 61 F.R.D. 372 (S.D.Fla.1973); *Sayre, supra* at 385.

While the financial commitment of a plaintiff's attorney is prominently addressed by other courts, there is no such controversy in the case *sub judice.* The law firm representing plaintiff has indicated its willingness to advance all costs of litigation and defendant does not dispute its ability to do so. Therefore, today's decision assumes that the law firm representing plaintiff is capable of financing a nationwide class action and would do so if given the opportunity.

The critical issue relative to adequacy of representation revolves around Section 706(k) of Title VII[2] which provides:

> "In any action or proceeding under this subchapter the Court, in its discretion, may allow the prevailing party, other than the Commission or the United States a reasonable attorney's fee as part of the costs, . . . ."

Clearly, an award of attorneys fees to defendant in a suit of this magnitude against an impecunious plaintiff would be meaningless. As noted previously, such an unfortunate precedent could lead class actions down an unintended path. "Indigent nominal plaintiffs could bring frivolous class suits without fear of reprisal in the hope of 'blackmailing'[3] the defendant into a settlement. Since a corporate defendant in a class action has potentially extensive liability, the natural reaction is for the defendant to insure against whatever minuscule likelihood of success plaintiff possesses by effecting a settlement." *Rode, supra* at 231–232 (footnote omitted). It would be equally unfortunate, however, if Section 706(k) of Title VII were used to completely exclude

---

**2.** Also relevant to adequacy of representation is the ethical conduct of plaintiff's counsel in agreeing to advance expenses of litigation. *Chevalier v. Baird Savings Association,* 72 F.R.D. 140 (E.D.Pa.1976); *Sayre, supra.* At this juncture, however, the Court's attention is focused upon the representative plaintiff's status and not her attorney's conduct. Any improper ethical conduct can be properly con-

sidered in conjunction with the motion for class certification.

**3.** No implication is intended that plaintiff in the case *sub judice* may be attempting to "blackmail" the defendant. Disregard of Section 706(k) of Title VII, however, would open the door to such a practice.

indigent[4] plaintiffs from the class action machinery. It would indeed be anomalous if Rule 23 of the Federal Rules of Civil Procedure shunned those very people whose inability to obtain reasonable access to the judicial process motivated the advent of class actions.

■ Unwilling to distort the clear purpose of Section 706(k) and equally unwilling to make class actions a prerogative of the affluent, a compromise is necessary. The form of such a compromise is limitation of the class size. As the Court stated in *Sayre, supra* at 385:

"When possible this device seems entirely appropriate to minimize the conflicts which might be created by the advancement of significant funds by plaintiffs' counsel."

Although not appropriate for use in *Sayre,* restriction of class size was relied upon in *P. D. Q., Inc.* to preserve an underfunded class action. Limiting the scope of the putative class will reduce the attorneys fees necessary to proceed with the instant case, thereby making it more likely that Penny Rode will be able to meet any potential future award to defendant under Section 706. At the same time plaintiff is not forced to abandon her class suit. Accordingly, class discovery shall heretofore be limited to females in the Western District of Pennsylvania.[5]

■ Defendant requested that class certification be denied because of Penny Rode's limited financial resources. Such relief is premature. "Whether a party adequately represents a class depends on all the circumstances of the particular case." 3B, Moore, *Federal Practice,* ¶ 23.07[1]. Therefore, we decline to deny class certification at this time without prejudice to renewal by defendant at the conclusion of class discovery in opposition to plaintiff's motion for class certification. Upon consideration of the motion for class certification, the Court will then determine whether or not a class limited to the Western District of Pennsylvania should be certified—giving due regard to all of the requirements of Rule 23.

An appropriate Order will issue.

---

4. An indigent nominal plaintiff in a class action setting should not necessarily be regarded as economical'y poverty stricken. Indigent is merely used to connote the unavailability of funds for the pursuit of Rule 23 litigation.

5. The jurisdiction of the Western District of Pennsylvania encompasses the following counties: Allegheny, Armstrong, Beaver, Bedford, Blair, Butler, Cambria, Clarion, Clearfield, Crawford, Elk, Erie, Fayette, Forest, Greene, Indiana, Jefferson, Lawrence, McKean, Mercer, Somerset, Venango, Warren, Washington, Westmoreland.