Barry M. Willoughby, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiffs.

Frederick H. Schranck, City Sol. Office, Wilmington, Del., for defendant City of Wilmington Fire Department.

Gary W. Aber, of Heiman & Aber, Wilmington, Del., for defendant Wilmore.

**WILMINGTON FIREFIGHTERS LOCAL 1590, et al., Plaintiffs,**

v.

**CITY OF WILMINGTON, et al., Defendants.**

**Civ. A. No. 84–400–JJF.**

United States District Court, D. Delaware.

Dec. 10, 1985.

OPINION

FARNAN, District Judge.

This action was brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)–5, the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, and the Civil Rights Act of 1871, 42 U.S.C. § 1983, for injunctive relief and damages for lost salary. The matter presently before the Court is plaintiff's Motion for Class Certification.

---

**3.** The above stated amount is to be retained by the Clerk of the Court for subsequent distribution to the parties.

BACKGROUND.

Plaintiff, Dennis M. Kirlin, is a white firefighter employed by the defendant City of Wilmington (hereinafter "the City"). Plaintiff Local 1590, International Association of Firefighters (hereinafter "the Union"), is the collective bargaining representative of uniformed employees of the Wilmington Fire Department. Plaintiffs allege that the City unlawfully denied Kirlin and other white firefighters the opportunity for promotion on account of their race, by altering its 1984 promotion testing procedures for the race-based purpose of increasing the number of minority firefighters on the promotion list, in order to comply with the City's interpretation of the consent decree entered in *Wilmore, et al. v. City of Wilmington*, C.A. No. 80–76 (D.Del. June 14, 1983).

The alleged actions of which plaintiffs complain can be briefly summarized as follows. In March 1984, the City issued General Notices concerning the 1984 promotional tests. These Notices outlined a three-part examination procedure for promotional candidates, involving a "Problem Analysis Presentation" (P.A.P.), an "Administrative/Management Task Analysis" (A.M.T.A.), and an "Interview/Record Appraisal" (Interview). Plaintiffs allege that, under the original procedures outlined by the City, each candidate was to be ranked "top down"[1] based on his overall score, with the P.A.P. constituting 60% of the total score, the A.M.T.A. 25%, and the Interview 15%.

Plaintiff Kirlin received the highest score of any firefighter on the combined P.A.P. and A.M.T.A. portions of the exam, but his Interview score fell in the middle range. Based on the top down procedure described, Kirlin would have ranked seventh overall on the list for promotion to Lieutenant. However, plaintiffs alleged that after the P.A.P. and A.M.T.A. portions of the test were administered and the results computed, the City altered the scoring system for the express purpose of increasing the number of minority firefighters in a favorable promotion position, in order to comply with its interpretation of the promotional goals outlined in the consent decree in *Wilmore, supra.*[2] Under the substituted system, candidates were ranked based on certain minimum P.A.P. and A.M.T.A. scores, and added weight was given to the Interview component. Kirlin's rank on the list computed under this system fell from seventh overall to forty-first overall, greatly reducing any chance of promotion.[3]

DISCUSSION.

Plaintiff seeks certification of the following class of individuals, under Rule 23(a) and Rule 23(b)(2):

> minority test taker promotional rate shall at any time be less than 80% of the white test taker promotional rate, as disparate impact is defined by the 'Uniform Guidelines and [sic] Employment Selection Procedures' (1978); 29 C.F.R. § 1607.4(d). Alternatively, disparate impact will be considered to have occurred if the probability of the distribution of minority members, on any promotional list of the City of Wilmington Fire Department shall be less than five percent (5%) when compared to the distribution of white firefighters ...

Consent Decree and Order, June 14, 1983, *Wilmore, et al. v. City of Wilmington*, C.A. No. 80–76.

---

1. A "top down" scoring system assigns a numerical rank to each candidate for promotion. As vacancies occur, candidates are promoted based on their rank on the list, i.e. the candidate ranked first is promoted to the first vacancy, the candidate ranked second is promoted second, etc. Plaintiffs' Opening Brief in Support of Their Motion for Class Certification, at 3.

2. Paragraph 16 of the *Wilmore* consent decree provides as follows:
   *Future Promotional Examination.* The City of Wilmington, hereby agrees and certifies that all future promotional exams and procedures shall afford all minority members of the City of Wilmington Fire Department full, complete, fair and equal promotional opportunities in keeping with 42 U.S.C. §§ 1981, 1983, and 2000(e), *et seq.*, and the Wilmington Charter, and that such promotional exams and procedures shall not result in a disparate impact on minorities. Disparate impact shall, for the purposes of this compromise and settlement be considered to have occurred if the

3. The City originally estimated that there would be twenty-six promotions from Firefighter to Lieutenant under the 1984 promotional test. Appendix to Plaintiff's Opening Brief, at 44. However, to date there have been no promotions. Defendant's Answering Brief, at 19.

All present or future uniformed employees of the City of Wilmington Fire Department who took the 1984 promotional exam or, who are eligible for future promotional exams, whose position on the 1984 promotion list or on any future promotion lists was or may in the future be affected by the City of Wilmington's interpretation of its obligations under the consent decree in *Wilmore v. City of Wilmington*, Civl Action No. 80–76, to require alteration of the scoring system of promotional examinations for the purpose of increasing the number or percentage of minority promotions. The plaintiff class, however, shall not include members of the Wilmore class in Civil Action No. 80–76.

In order to certify this action as a class action, plaintiffs must first satisfy the four mandatory pre-requisites for a class action under Rule 23(a). *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3rd Cir.1974). Rule 23(a) provides:

(a) Prequisitites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, plaintiffs must show that the action is properly maintainable under one of the three subsections of Rule 23(b). *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163, 94 S.Ct. 2140, 2145, 40 L.Ed.2d 732 (1974). Plaintiffs here seek certification under Rule 23(b)(2), which provides:

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Plaintiffs have the burden of proving that an action is appropriate for class certification. *See Davis v. Romney*, 490 F.2d 1360, 1366 (3rd Cir.1974); *Coca Cola Bottling Co. v. Coca Cola Co.*, 98 F.R.D. 254, 265 (D.Del.1983). Accordingly, this Court must carefully scrutinize the request for class certification to insure that all requirements are met. *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 157–58, 162 S.Ct. 2364, 2370–71, 72 L.Ed.2d 740 (1982).

*A. Prerequisites of Rule 23(a).*

*1. Numerosity.*

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable". Impracticability of joinder in a given case is a subjective determination based on the number of parties, expediency of joinder, and inconvenience of individual suits. *See Ulloa v. City of Philadelphia*, 95 F.R.D. 109, 115 (E.D.Pa.1982); 7 Wright & Miller, Federal Practice & Procedure, § 1762 at 602 (1972).

Here, plaintiff has identified a total of fifty-four current members of the proposed class who were adversely affected by the City's alteration of the scoring system. Appendix to Plaintiff's Opening Brief, at 50, 54–55. This number was computed by comparing the rank of each candidate on the promotional list under the original scoring procedure with his rank on the City's revised scoring list after the interview component was completed. This yielded a total of thirty-four firefighters whose rank on the new list was lower than on the original list. Appendix to Plaintiff's Brief, at 57–61. Plaintiff added to this number twenty-two additional firefighters who were denied the opportunity to proceed to the interview stage because their scores were not sufficient to place them in the "well qualified" group under the new scoring system. Appendix to Plaintiff's Brief, at 52, 56–61. Plaintiff also seeks to include as class members future firefighters who may be adversely affected by a City decision to alter future tests to increase the number of potential minority promotions, in order to comply with the *Wilmore* consent decree.

The City contends that the proposed class, when properly defined, does not meet the numerosity requirement. It argues that a proper class should include only firefighters who have a *probable chance* for promotion under the original ranking structure, and not all firefighters who were adversely affected by the change. Thus, the City argues that it is erroneous to include the twenty-two firefighters who were not in the "well qualified" group, since their lower rankings on either scale would make their promotion highly unlikely. Also, at oral argument, the City indicated that three other proposed class members had been erroneously included by plaintiff, because their rankings had actually improved under the City's list. Based on its estimate of the number of actual promotions likely to occur, the City arrives at a figure of thirteen current firefighters with a "probable chance" for promotion, who are properly includable in the proposed class. The City alleges that this number is not so numerous as to make joinder impracticable. *See*, e.g., *Moore v. Western Pa. Water Co.*, 73 F.R.D. 450 (W.D.Pa.1977); 7 Wright & Miller, Federal Practice & Procedure, § 1762 at 596–97.

In so limiting the scope of the proposed class, the City misinterprets the allegedly discriminatory conduct of which plaintiffs complain. Kirlin alleges that the City discriminated against non-minority firefighters by the act of restructuring the promotion rankings to comply with the *Wilmore* consent decree. He does not allege any discrimination in actual promotions. Thus, all non-minority firefighters adversely affected by the restructuring, including the twenty-two outside the "well qualified" group, are harmed by the City's alleged discrimination, and are properly included within the proposed class. Excluding the three firefighters whom the City alleges were erroneously counted among those adversely affected, the proposed class numbers fifty-one individuals, a number the Court finds sufficient to satisfy the numerosity requirements of Rule 23(a).

The City also argues that inclusion of future class members within the class definition is improper, since they constitute an "amorphous, phantom group, incapable of identification". *Moore v. Western Pa. Water Co.*, 73 F.R.D. 450, 453 (W.D.Pa.1977). It also argues that, whether or not such future members are included, they should not be counted for purposes of determining numerosity. *See Scott v. University of Delaware*, 601 F.2d 76, 88 n. 25 (3rd Cir. 1979).

Having determined that the present class members are sufficiently numerous to sustain a class action, the Court need not consider whether future class members should be counted for purposes of determining numerosity. However, these future members are properly included within the class definition, in order to insure that any injunctive relief won by the named plaintiffs runs in their favor. *See Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 254 (3rd Cir.1975); *Dudo v. Schaffer*, 82 F.R.D. 695, 699 (E.D.Pa.1979). *But see Moore*, 73 F.R.D. at 453 (injunctive relief automatically benefits future class members).

### 2. *Common Questions.*

Rule 23(a)(2) provides that a class action is proper only if "there are questions of law or fact common to the class". This rule requires only that "there be at least one issue whose resolution will affect all or a significant number of the putitive class members." *Broth. Ry. Carmen of U.S. & Canada v. Delpro Co.*, 98 F.R.D. 471, 474 (D.Del.1983), citing *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir.1982).

The City does not dispute that common issues of law and fact exist with respect to the proposed class members. Although the City states in its brief, without elaboration, that "such commonality ceases to exist, however, if the class is to include either future white test takers or those with no practical hope of promotion . . .", the Court finds no reason for making such a distinction. As discussed *supra*, the City's alleged discrimination in the alteration of the promotion rankings affects both the firefighters who rank high on the City's substi-

tuted list and those who rank low. If, as plaintiffs claim, the City's compliance with the *Wilmore* consent decree constitutes purposeful racial discrimination, this compliance will affect all current members of plaintiffs' proposed class as well as future class members, should such compliance continue. Thus, the commonality requirement is clearly met by plaintiffs' proposed class.

### 3. *Typicality.*

Rule 23(a)(3) allows class certification only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class ...". This provision requires that "a class representative must be part of the class and 'possess the same injury' as the class members". *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977), quoting *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974). A representative's claim is typical if it arises from the same event, practice, or conduct that gives rise to the claim of the other class members, and is based on the same legal theory. *Broth. Ry. Carmen,* 98 F.R.D. at 475.

The City, again, does not dispute the typicality of the representatives if the class is defined as it suggests. However, it claims that typicality is no longer present if future firefighters or those not on the "well qualified" list are included. As discussed above, this distinction is based on a misinterpretation of the harm allegedly suffered by plaintiffs. All proposed class members, not just current members or those with a "probable chance" of promotion, are affected by the City's allegedly discriminatory ranking system. Although plaintiff Kirlin ranked higher on the original list than others in the proposed class, and is thus more likely to be promoted should a small number of promotions actually occur, this high ranking does not distinguish him from others lower on the list in the harm allegedly suffered, i.e. a lower ranking solely on the basis of his race. In

any event, any such distinction between Kirlin and the other firefighters is a "mere divergence" that "will be harmless in that it will not impair the incentive of the named representative in vigorously prosecuting all aspects of the case." *Scott,* 601 F.2d at 85; *Broth. Ry. Carmen,* 98 F.R.D. at 475. Likewise, Kirlin's claim is typical of the claims of future firefighters who would find themselves similarly harmed by future discriminatory testing.

### 4. *Adequacy of Representation.*

Rule 23(a)(4) requires a plaintiff to show that "the representative parties will fairly and adequately protect the interests of the class." Adequate representaion requires a showing that (1) the plaintiff's attorney is qualified, experienced, and able to conduct the litigation, and (2) the representative plaintiffs' interests are not antagonistic to those of the class. *Wetzel,* 508 F.2d at 247.

The City does not dispute the qualifications of plaintiffs' counsel. Rather, it contends that Kirlin, the representative plaintiff, has interests antagonistic to certain members of the proposed class. Specifically, it claims that Kirlin is representative only of the group of firefighters with a "probable chance" of promotion under the original ranking system, and not of the firefighters who were not in the "well qualified" group, or who have no "probable chance" for promotion.

As noted above, this distinction among class members reflects a misconception of the harm alleged by plaintiffs, regardless of their probability of promotion. While Kirlin obviously would be a more likely candidate for promotion under the original rankings than other class members, any difference of interest between Kirlin and the rest of the class based on probability of promotion is a "mere divergence", which will not disqualify Kirlin as representative as long as he will pursue the action with vigor and in the interest of the class. *Scott,* 601 F.2d at 85; *Peil v. National Semiconductor Corp.,* 86 F.R.D. 357, 366 (E.D.Pa.1980). In fact, since Kirlin is among the firefighters most egregiously

affected by the City's action, he would appear to be one of the class members most likely to pursue the action with the requisite vigor and interest.

The City also objects to Kirlin's adequacy as a representative on the grounds that he has not made a sufficient financial commitment to meet the costs of this action. The City notes that such a commitment is important to determining adequacy of representation because of the class representative's responsibility for bearing the costs of prosecuting the action, including reimbursement of attorneys fees under Section 706(k) of Title 7, should the City prevail. *See Rode v. Emery Air Freight Corp.,* 76 F.R.D. 229, 231 (W.D.Pa.1977).

Generally, courts considering this issue have recognized that the representative plaintiff's ability to meet the financial burdens of prosecuting a class action is relevant to his adequacy as a class representative. *See Rode,* 76 F.R.D. at 231; *Rode v. Emery Air Freight,* 80 F.R.D. 314, 316–17 (W.D.Pa.1978); *Apanewicz v. General Motors Corp.,* 80 F.R.D. 672, 679–80 (E.D.Pa. 1978). However, the issue is clearly a sensitive one, and denial of class certification on this ground alone is rarely appropriate. *See,* e.g., *Apanewicz,* 80 F.R.D. at 679–80; *Rode,* 80 F.R.D. at 316–17; *National Auto Brokers Corp. v. General Motors Corp.,* 376 F.Supp. 620, 637–38 (S.D.N.Y.1974); *Ralston v. Volkswagenwerk, A.G.,* 61 F.R.D. 427, 433–34 (W.D.Mo.1973).

Although Kirlin admittedly does not have sufficient financial means to significantly support this action, the Court does not find that this merits denial of class certification. The Union remains a party to this action, and is apparently willing to pay all litigation costs. Plaintiff's Reply Brief, at 24. As a party, it would also presumably be able to meet any future award of attorneys' fees to the defendants under Section 706(k). *See Rode,* 80 F.R.D. at 316. Since this action is otherwise appropriate for class certification, denial of certificaton solely on the ground of Kirlin's lack of financial means would not be appropriate.

### B. *Certification Under Rule 23(b)(2).*

Plaintiffs' allegations, if successfully proved at trial, are clearly applicable to the class as a whole, and injunctive relief would clearly benefit the class as a whole, thus making certification of this action under Rule 23(b)(2) appropriate.[4]

Accordingly, the Court shall certify the following class:

> All present or future uniformed employees of the City of Wilmington Fire Department who took the 1984 promotional exam or, who are eligible for future promotional examinations, whose position on the 1984 promotion list or on any future promotion lists was or may in the future be affected by the City of Wilmington's interpretation of its obligations under the Consent Decree in *Wilmore v. City of Wilmington,* Civil Action No. 80–76, to require alteration of the scoring system of promotional examinations for the purpose of increasing the number or percentage of minority promotions. The plaintiff class, however, shall not include members of the *Wilmore* class in Civil Action No. 80–76.

This certification is conditional upon a subsequent determination by this Court that this action is properly maintainable as a class action. *See* Rule 23(c)(1).

---

**4.** The fact that plaintiffs also seek lost salary on behalf of current class members allegedly harmed by the City's ranking procedures does not render Rule 23(b)(2) inapplicable. Although the language of 23(b)(2) refers only to injunctive and declaratory relief, actions under this Section are not limited to those remedies exclusively. *See Wetzel,* 508 F.2d at 251.