**Joseph D. FERRARO, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

Civ. No. 83–3596.

United States District Court, D. New Jersey.

June 12, 1984.

As Amended June 25, 1985.

Lorraine A. DiCintio, Ballen, Keiser, Denker, Bor & Gertel, Camden, N.J. and Laurence S. Berman, Levin & Fishbein, Philadelphia, Pa., for plaintiff, Joseph D. Ferraro.

Rosemary J. Bruno, John C. Heavey, Carpenter, Bennett & Morrissey, Newark, N.J., for defendant, General Motors Corp.

## OPINION

JEROME B. SIMANDLE, United States Magistrate:

In this proposed class action, the plaintiff Joseph D. Ferraro seeks to be the representative of all persons residing in New Jersey who purchased 1980 model year General Motors "X" cars and who still retain ownership of these allegedly substandard vehicles. As class representative, Mr. Ferraro will be required to satisfy each of the prerequisites of class action certification, including the requirement of Rule 23(a)(4), Fed.R.Civ.P. that "the representative parties will fairly and adequately protect the interests of the class."

The issue presently before the court, upon the motion of defendant, General Motors Corporation, to compel discovery,[1] is whether the plaintiff's financial ability to pursue this action on behalf of the class, including his personal income and any agreements with counsel, is relevant and discoverable under Rule 23(a)(4), *supra*.

Defendant seeks an order compelling plaintiff to produce: (a) copies of his federal and state income tax returns for the years 1980 through 1983 [Defendant's Request for Production of Documents ¶ 7], and (b) "[a]ll documents which relate to, refer to or evidence plaintiff's ability to command financial resources adequate to support the cost of prosecuting the instant action, including but not limited to any fee agreement between Mr. Ferraro and his counsel [*id.* ¶ 8], and (c) deposition testimony as to the factual basis for the allegation

---

1. Other aspects of defendant's discovery motion were resolved in this court's oral opinion of April 6, 1984 and order filed April 19, 1984, which compelled plaintiff to search for and produce certain non-financial documents related to his claims.

in paragraph 13(c) of his complaint that "the plaintiff has or can acquire sufficient financial resources to assure the adequate protection of the members of the class." This motion was filed at the end of a period of discovery limited to class certification, under this court's scheduling order determining the course of proceedings pursuant to Rules 16 and 23(d), Fed.R.Civ.P. Plaintiff's class certification motion will be filed when the present discovery issue is resolved.

There is a general consensus on the narrow point that the class representative and his attorneys are required to "competently, responsibly and vigorously prosecute the suit," *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978), and that facts related to plaintiff's adequacy of representation are a proper subject of discovery. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13, 98 S.Ct. 2380, 2389 n. 13, 57 L.Ed.2d 253 (1978).

Financial ability to maintain the class in a manner protecting the rights of all class members, who are themselves entitled to vigorous representation, is in general terms a relevant consideration when plaintiff seeks to demonstrate adequacy as a class representative. For example, the representative plaintiff must bear the cost of class notice, under Rule 23(c)(2), and if the plaintiff is unwilling or unable to pay for such notice, the costs of notice cannot be transferred to defendant, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–179, 94 S.Ct. 2140, 2152–2153, 40 L.Ed.2d 732 (1974). In addition to required Rule 23(c)(2) notice discussed in *Eisen*, the court may in its discretion also require notice to some or all class members regarding any step of the litigation or regarding the issue of class representation itself, Rule 23(d)(2). This class action cannot be compromised or dismissed unless notice is given to all members of the class, Rule 23(e). Such notices unavoidably impose burdens of paperwork, postage, mailing and duplicating upon the class representative. Ordinary costs of dis-

covery and trial are also borne by the representative.

Adequacy of representation is also a threshold issue of inquiry because of the prejudice that inadequate representation may cause. If the certified class is not represented vigorously, the plaintiffs may lose a meritorious case and suffer the consequences of the adverse judgment, since all class members are bound by the result. 7 Wright & Miller, *Federal Practice and Procedure* § 1765 at 617 (1972); Comment, "The Importance of Being Adequate: Due Process Requirement Under Federal Rule 23," 123 *U.Pa.L.Rev.* 1217 (1975). Conceivably even the defendant may also suffer prejudice from inadequate class representation because, in such circumstances, the class action judgment for defendant may not be given *res judicata* effect as to absent class members, *see Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir.1973), and the matters will be subject to costly relitigation.

Class certification has been refused where the representative plaintiff is unable to demonstrate an ability to bear the costs of litigation. *See, e.g., Held v. Missouri Pacific R.R. Co.*, 64 F.R.D. 346, 350 (S.D. Tex.1974); *National Auto Brokers Corp. v. General Motors Corp.*, 376 F.Supp. 620, 637–638 (S.D.N.Y.1974); *Wilson v. General Motors Corp.*, 21 F.R.Serv.2d 730, 731 (S.D.Ind.1974); *see also Apanewicz v. General Motors Corp.*, 80 F.R.D. 672, 680 (E.D. Pa.1978) [citing financial inability as one basis for finding plaintiff to be an inadequate class representative]. In other cases, the plaintiff's financial ability has been assumed to be a relevant consideration in determining the adequacy issue. *See, e.g., Elster v. Alexander*, 74 F.R.D. 503, 505 (N.D.Ga.1976); *Dennis v. Saks & Co.*, 20 F.R.Serv.2d 994, 997 (S.D.N.Y. 1975). Other courts have held that detailed inquiry into the plaintiff's financial situation is irrelevant if it goes beyond ascertaining plaintiff's awareness of his financial obligations in the litigation and his willingness to assume those obligations. *See, e.g., In re South Central Bakery Products Antitrust Litigation*, 86 F.R.D.

407, 418 (M.D.La.1980); *In re Independent Gasoline Antitrust Litigation,* 79 F.R.D. 552, 557 (D.Md.1978). Still other cases preclude any consideration of the named plaintiff's financial ability. *See, e.g., Sanderson v. Winner,* 507 F.2d 477 (10th Cir. 1974), *cert. denied sub nom. Nissan Motor Corp. v. Sanderson,* 421 U.S. 914, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975).

The depth of permissible inquiry into plaintiff's financial circumstances is thus a matter of dispute in the federal courts. In this circuit alone, cases such as *Rode v. Emery Air Freight Corp.,* 76 F.R.D. 229, 231 (W.D.Pa.1977) and *Apanewicz v. General Motors Corp., supra,* support the concept of detailed "financial ability" discovery, while in *Sley v. Jamaica Water & Utilities, Inc.,* 77 F.R.D. 391, 393–394 (E.D. Pa.1977) and *Umbriac v. American Snacks, Inc.,* 388 F.Supp. 265, 275 (E.D.Pa. 1975), defendants' concerns for the plaintiffs' financial ability to assure adequate representation were dismissed as a defense tactic to preclude *any* class representation at all, and in *Bogosian v. Gulf Oil Corp.,* 337 F.Supp. 1228 (E.D.Pa.1971) the plaintiff's personal financial ability was held to be irrelevant.

I disagree with those decisions which find the class representative's financing of the litigation to be completely irrelevant to the issue of Rule 23(a)(4) adequacy. Concern for the plaintiff's ability to vigorously pursue the litigation on behalf of all class members should properly be permitted to include discovery, to a limited extent, of the financing of the litigation. Whether the plaintiff himself bears the financial burden, shares it with others, agrees to reimburse others, or agrees to be reimbursed by others are circumstances which should be revealed and considered in connection with the adequacy of the class representative. But whether the named representative is a millionaire or a pauper, the proper focus of financial discovery is narrow, because the fundamental concern is whether the expenses of litigation will be paid, by plaintiff or by others, as they are incurred, so that the litigation can be pursued vigorously and in an orderly fashion. Reasonable as-

surance is required that the action will be pursued vigorously to its conclusion, to avoid prejudice to the class members and defendant alike. Obtaining discovery in this area necessarily must strike a balance between (1) the legitimate need to determine whether it appears that the litigation will be sufficiently funded, and (2) the avoidance of undue burden, oppression or embarrassment directed toward the named plaintiff by overzealous inquiry into his personal financial background.

There is a potential for mischief if a defendant is permitted to obtain uncircumscribed financial ability discovery from its adversary. After determining the precise amount of resources that its adversary is willing to commit to the litigation, a defendant might be tempted to overwhelm the plaintiff's financial resources rather than to seek a resolution of the case. Moreover, permitting detailed financial scrutiny of the representative's personal finances might deter plaintiffs from seeking class action redress. Such potentially invasive scrutiny, although having no relationship to the merits of the class action itself, could be misused as a device to deter such suits entirely. I am not stating that these factors necessarily motivate the defendant in this case.

The plaintiff argues that no further financial discovery should be allowed in this case because of the existence of a fee agreement whereby plaintiff's counsel, Levin & Fishbein, is advancing the costs of this litigation, with plaintiff Ferraro ultimately responsible for reimbursement.

Plaintiff's counsel have alluded to the fee agreement for advancing costs on several occasions. Plaintiff's counsel first stated that they are "advancing the costs of this litigation and that plaintiff is ultimately responsible for reimbursement of the costs of the litigation to his attorneys." [Plaintiff's Br. in Opposition, 3/14/84, at 7.]

The affidavit of plaintiff's attorney Laurence S. Berman, Esquire, was also submitted, confirming that his law firm, Levin & Fishbein, "has agreed to advance costs in

this case for plaintiff and plaintiff's class," with such costs to "include, but are not limited to, costs for notice to the class, expert fees, deposition transcript costs, filing fees, etc." [Berman Aff., 3/8/84 at ¶¶ 3 and 4.] Counsel's affidavit further states that "plaintiff has agreed, in accordance with the Canons of Ethics, that should this matter not be concluded successfully on plaintiff's behalf, plaintiff is ultimately responsible for reimbursement of the costs to Levin & Fishbein." [*Id.* ¶ 5.]

The plaintiff's promise to repay the costs of litigation is muddled by his counsel's statement that the plaintiff may be relieved of the obligation for repayment in the event the litigation is unsuccessful, [Plaintiff's Br. in Opposition, 3/14/84, at 13 n. 5] relying upon ABA, Model Rules of Professional Conduct, Rule 1.8(e)(1) [adopted by the ABA House of Delegates August 2, 1983].[2] The ABA Model Rules have not been adopted in this District.[2a] Pursuant to General Rule 6, Rules of the U.S. District Court for the District of New Jersey, this court has determined that the Disciplinary Rules of the Code of Professional Responsibility of the ABA, as amended by the Supreme Court of New Jersey, govern the conduct of attorneys appearing before this court. Under DR5–103(B), the attorney may advance or guarantee expenses of litigation "provided the client remains ultimately liable for such expenses." Whether the counsel fee agreement is consistent with DR 5–103(B) is not before the court in this discovery motion.

Even if the plaintiff remains ultimately liable for repayment of expenses advanced by counsel, the fact does not automatically justify detailed discovery of plaintiff's personal financial resources and ability to make repayment. First, the fee agreement itself is discoverable, as its relevance is unquestioned and its terms have been paraphrased by plaintiff's counsel. This agreement whereby plaintiff's attorneys agree to advance or reimburse the costs of litigation is highly relevant to the issue of adequate representation.[3] Plaintiff's counsel will be directed to furnish a copy of this fee agreement to defendant.

Second, the ultimate costs of this class action are unknowable. Discovery of plaintiff's ability to make repayment to his counsel would produce information which might not be relevant to predicting plaintiff's financial obligations, let alone the impact that plaintiff's present knowledge of such speculative obligations might have upon his willingness to vigorously prosecute the class action.

Third, even if the action becomes protracted and its costs become great, the funding of the litigation itself is undermined only if plaintiff's counsel breaches an apparent promise to advance the costs of litigation. Discovery of the adequacy of representation should not be launched on the premise that class counsel will not live up to their agreement with the class representative. Pre-certification discovery of the issue of adequacy in this case is to be more narrowly focused upon the agreement of counsel to advance fees and the willingness of the class representative to be liable for repayment, rather than upon

---

2. Rule 1.8(e)(1) of the Model Rules states:
   (e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation except that:
      (1) A lawyer may advance court costs and expenses of litigation the repayment of which may be contingent upon the outcome of the matter.
   The comment to the Model Rule states, "Rule 1.8(e)(1) is similar to DR5–103(B), but eliminates the requirement that the client remain ultimately liable for such expenses.

2a. It is noted that after the filing of this Opinion, this District Court in fact amended General Rule 6 to adopt the Rules of Professional Conduct, effective October 1, 1984.

3. *Rode v. Emery Air Freight Corp., supra,* 76 F.R.D. at 230, 233; *Klein v. Henry S. Miller Residential Services, Inc., supra,* 82 F.R.D. 6, 9 (N.D.Tex.1978). Such an agreement is not privileged, *In re Semel,* 411 F.2d 195, 197 (3d Cir.), *cert. denied,* 396 U.S. 905, 90 S.Ct. 220, 24 L.Ed.2d 181 (1969), and it will be discoverable provided that it is relevant to any issue in litigation. Fee agreements have been typically voluntarily disclosed by counsel in class actions, *see e.g., Bartelson v. Dean Witter & Co.,* 86 F.R.D. 657, 674 (E.D.Pa.1980); *Sayre v. Abraham Lincoln Savings & Loan Ass'n,* 65 F.R.D. 379, 381 (E.D.Pa.1974), *opinion amended,* 69 F.R.D. 117 (E.D.Pa.1975), for these purposes.

the ability of the class representative to make repayment to his attorneys.

To the foregoing extent, I disagree with those cases in which the fee agreement to advance costs of litigation was found to be privileged or irrelevant. In this instance, where the fee agreement to advance costs of litigation has been paraphrased by plaintiff's counsel and cited in the court as a major reason why further inquiry into plaintiff's personal financial situation is irrelevant, the fee agreement is discoverable in its entirety. Assuming for present purposes that the fee agreement is revealed to be an agreement for full advancement of litigation costs of counsel, as plaintiff's counsel has represented to this court, then the defendant's motion to compel production of all other "documents which relate to, refer to or evidence plaintiff's ability to command financial resources adequate to support the cost of prosecuting the instant action" will be denied as irrelevant.

The plaintiff will not be compelled to produce copies of his federal and state income tax returns for 1980 through 1983, nor will the plaintiff be required to testify regarding his personal financial resources and income. Such discovery, in the circumstances of this case in which counsel have agreed to advance the costs of litigation, is largely irrelevant to the issue of adequacy of representation. Whatever arguable relevance may be found in the facts regarding plaintiff's ability to reimburse his attorneys at the conclusion of the case[4] is outweighed by the prospect of oppressiveness and embarrassment in the forced disclosure of such personal financial information.

The court is well aware that a plaintiff's tax return information is routinely discoverable in many other contexts, such as where plaintiff claims loss of income or profits or where tax return information may itself provide substantive evidence. See 8 Wright & Miller, Federal Practice and Procedure § 2019 at 162–164 (1970 ed.), and cases cited therein. Such is not the present case. Given the existence of an agreement of responsible counsel to advance litigation costs, there would appear to be no information in Mr. Ferraro's tax returns relevant to the adequacy of his representative status.

Nor is this a case in which defendant has an interest in determining whether plaintiff would be able to satisfy a judgment taxing counsel fees in favor of the defendant, as in a Title VII employment discrimination class action case, cf. Rode v. Emery Air Freight Corp., supra, 76 F.R.D. at 233. Counsel fees are generally unavailable to a prevailing defendant upon the claims alleged in the present complaint. In any event, a proposed class representative's ability to pay his adversary's counsel fees and costs would appear to be irrelevant to his adequacy as class representative.

Defendant also seeks to compel additional deposition testimony by Mr. Ferraro as to the factual basis for the plaintiff's allegation in complaint ¶ 12(c) that "the plaintiff has or can acquire sufficient financial resources to assure the adequate protection

---

4. The Third Circuit has recently suggested that the class representative's adequacy is not impaired by an agreement by another plaintiff to indemnify the class representative for litigation costs, Vanderbilt v. Geo-Energy, Ltd., 725 F.2d 204 (3d Cir.1983). The court rejected the defendant's suggestion that such an arrangement undermines the class representative's adequacy, stating, 725 F.2d at 209–210:

It is not uncommon in class actions to have persons other than the named plaintiff pay the costs of the litigation. This is especially true in cases involving indigent class plaintiffs and human rights issues. Indeed, attorneys' fees are sometimes even paid indirectly by the government through grants to public interest law firms. We do not see why class plaintiffs in corporate derivative actions must be obliged to pay the litigation costs out of their own pockets when class plaintiffs in these other class actions do not have the same obligation. When functioning as class plaintiffs in the federal courts, the rich are entitled to the same privileges as the poor.

Although the court did not address the situation in which class counsel advanced the costs of litigation, the same logic would govern this situation. The viability of the funding of the litigation is the primary concern in assessing adequacy from the financial standpoint. The financial burden to be borne by the class representative himself, as the Third Circuit has noted, is of very little concern as regards his adequacy.

of the members of the class." Plaintiff argues that such further questioning should be precluded because (a) the plaintiff has already testified at his deposition that he is cognizant of his ultimate responsibility to bear the costs of this case and he is willing to shoulder that responsibility, and (b) the agreement by counsel to advance costs renders the plaintiff's other financial resources irrelevant.

The plaintiff's deposition testimony on this issue was sketchy, and his answers were conclusory.[5] There was no questioning regarding plaintiff's counsel fee agreement, the terms of which were unknown to defendant at that time, and plaintiff refused to answer questions as to the basis of his allegation that he "has or can acquire sufficient financial resource to assure the adequate protection of the members of the class." [Tr. 79, lines 2–12.] Plaintiff also was directed not to answer questions as to how much he thought these litigation costs might be.

Courts have generally held that questioning the plaintiff's financial capacity and expectation about the amount of costs is improper if it goes beyond plaintiff's awareness of his financial obligations as class representative and his willingness to assume those obligations. *See In re Independent Gasoline Antitrust Litigation,* 79 F.R.D. 552, 557 (D.Md.1978); *In re South Central Bakery Products Antitrust Litigation,* 86 F.R.D. 407, 418 (M.D. La.1980); *see also Kamens v. Horizon Corp.,* 81 F.R.D. 444 (S.D.N.Y.1979); *Klein v. Checker Motors Corp.,* 87 F.R.D. 5 (N.D. Ill.1979).

In the present case, the defendant's motion to compel further "financial capability" deposition testimony will be denied, except that defendant may briefly question Mr. Ferraro regarding the terms of the counsel fee agreement's provision for counsel's advancing the costs of litigation and Mr. Ferraro's obligation to make reimbursement to counsel. Mr. Ferraro's awareness and willingness to assume this obligation may be inquired into, but Mr. Ferraro's ability to make repayment to his attorneys may not be inquired into. Again, Mr. Ferraro's personal financial ability to repay his attorneys for class litigation costs is not relevant to his adequacy as a class representative if the counsel fee agreement is as stated.

In summary, plaintiff will be directed to disclose his counsel fee agreement and to testify regarding his awareness of the agreement's provision for counsel's advancement of costs subject to his responsibility for reimbursement of costs, and his willingness to assume such responsibility. In all other respects, defendant's motion is denied.

The accompanying order is entered.

---

**5.** Relevant excerpts from plaintiff's deposition follow:

Q. Are you prepared to pay any such costs?
A. Yes, I am. [Tr. 75, lines 12–13.]

\* \* \* \* \* \*

Q. I take it that you are prepared if your class is certified to pursue the action for the class members?
A. Yes.
Q. If necessary, to be responsible for costs?
A. Yes, sir.
Q. Has anyone agreed to indemnify or repay you for such costs?
A. No, sir. [Tr. 77, lines 8–15.]