[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
The plaintiffs in this action, Faith Marr, Barbara Brown, CT Page 9965 Wendy Cartin, Robert Davenport, Douglas Eddy, D. Lance McCloud, Karl Myers and Felix Esposito, have filed a motion for certification as class action. From the testimony and evidence that was produced at the hearing including reasonable inferences deduced therefrom, the following facts relevant to the issue of certification are found to have been established. The proposed class is made up of "all persons who now own or have owed, at any time after July 9, 1993, residential property in the Town of New Milford, within the area encompassed by the following boundaries:
 (a) On the North: from the point where Candlewood Lake Road North meets Jerusalem Road, from Jerusalem road east to Sunny Valley Road, Sunny Valley Road east and then north, including Caldwell Drive to Sunny Valley Road to Route 7;
 (b) On the East: Route 7 and Pickett District Road to Lanesville Road;
 (c) On the South: Lanesville Road west across Route 7 to Sullivan Road to Old Town Park Road and continuing on Old Town Park Road and continuing on Old Town Park Road to where it intersects with Candlewood Lake Road North;
 (d) On the West: from the point where Old Town Park Road meets Candlewood Lake Road North to the point where it meets Jerusalem Road.
Street boundaries included within the above description shall include residential property with frontage on either side of such street." (Amended Complaint ¶ 1.) A copy of a map depicting the above boundary lines was submitted to the court and is attached hereto as Exhibit A.[1]
The complaint includes allegations of negligent nuisance (first count), absolute, intentional nuisance (second count), nuisance based on a statutory violation (third count), reckless misconduct (fourth count) and violations of the Connecticut Unfair Trade Practice Act (CUTPA), § 42-110g[2] (fifth count). Plaintiffs seek compensatory damages, attorneys fees and punitive damages under CUTPA. At present, the court must decide whether to grant the plaintiffs' motion for certification as a class action which is brought by two different but overlapping sources of authority: counts one through four are brought pursuant Practice Book §§ 87 and 88 and count five is brought pursuant to the provisions of the CUTPA, 42-110a et seq., of the Connecticut CT Page 9966 General Statutes. See Crowley v. Banking Center, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 237599 (March 6, 1992, Katz, J., 7 CSCR 403).
A hearing was held on this matter on October 31, 1996, at which time each proposed representative of the class and surrounding land owners who support class action certification presented testimony. The defendants elected not to present any testimony. According to the testimony presented at the hearing, the named plaintiffs wish to represent a class of owners in excess of 800 residential properties immediately surrounding a 150 acre municipal solid waste landfill in New Milford, Connecticut.[3] The landfill is allegedly owned and operated by the defendants WMX Technologies, Waste Management Inc., and Waste Management of Connecticut, Inc. The plaintiffs allege that the landfill was operated in an unreasonable and unlawful manner that caused substantial injury to the plaintiffs and their property.
The plaintiffs testified that the operation of the landfill exposed them to foul, noxious, and disgusting odors, noise, dust, traffic congestion, sea gulls, pests and vermin. The plaintiffs are seeking damages for diminution in property value, loss of use and enjoyment of their property and inability to live normally, sleep, recreate, or conduct normal household activities.
The requisites for a class action are set forth in Practice Book § 87 which provides: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Id. "These requirements are often referred to as numerosity, commonality, typicality, and adequacy of representation." Cook v. Rockwell Intern. Corp.,151 F.R.D. 378, 381 (D.Colo. 1993).
In addition to the foregoing requirements, a movant for certification as a class action must also satisfy the requirements Practice Book § 88 by demonstrating "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." CT Page 9967 Practice Book § 88.
"Because [the above] requirements are substantially similar to the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure, [courts] look to federal case law as an aid to . . . construction of these requirements. SeeBoard of Trustees v. Freedom of Information Commission, 181 Conn. 544,553, 436 A.2d 266 (1980); Success Village Apartments, Inc.v. Local 376, 175 Conn. 165, 168, 397 A.2d 85 (1978)." (Footnote omitted.) Arduini v. Auto. Ins. Co. of Hartford, Connecticut,23 Conn. App. 585, 589, 583 A.2d 152 (1990).
"The plaintiff bears the heavy burden of establishing that each requirement of the rule is met. McKernan v. UnitedTechnologies Corporation, 120 F.R.D. 452, 453 (D. Conn. 1988). Although a trial court must undertake a rigorous analysis to determine whether the plaintiff has borne this burden successfully; General Telephone Co. of Southwest v. Falcon,457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); it has broad discretion in determining whether a suit should proceed as a class action. Califano v. Yamasaki, 442 U.S. 682, 703,99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); Andrews v. Bechtel PowerCorporation, 780 F.2d 124, 130 (1st Cir. 1985); Fink v. NationalSavings Trust Co., 772 F.2d 951, 960 (D.C. Cir. 195)." Arduiniv. Auto. Ins. Co. of Hartford, Connecticut, supra, 23 Conn. App. 589-90.
In addition to the requirements of both state and federal practice, the United States Supreme Court has impliedly imposed additional requirements in stating that "[a] class representative must be a part of the class and `possess the same interest and suffer the same injury' as the class members." General TelephoneCompany of Southwest v. Falcon, 457 U.S. 147, 156,102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); East Texas Motor Freight System,Inc. v. Rodriquez, 431 U.S. 395, 403, 97 S.Ct. 1891,52 L.Ed.2d 453 (1977). Thus, there are eight requirements for the certification of a class action: (1) that the class is so numerous that joinder of all members is impracticable: (2) that there are questions of law or fact common to the class, (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class: (4) that the representative parties will fairly and adequately protect the interests of the class. (5) that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; (6) that a class action is superior to other available methods for the fair and efficient CT Page 9968 adjudication of the controversy; (7) there must be a class; and (8) the class representative must be a member of that class.
Prior to determining whether the plaintiffs have established their claim for class action status, the court will discuss some preliminary matters. "An inquiry into the merits of the claims of the representative or the class in inappropriate when making the decision whether the action should be certified . . . . A court is obligated to determine only whether the requirements of [Practice Book §§ 87 and 88] have been satisfied. . . . On the other hand, in determining whether the requirements of [the rules] have been met, it is often necessary to analyze the substantive claims and defenses of the parties and the essential elements of those claims and defenses. . . . However, there is a distinction between identifying the issues that the case will present for purposes of determining whether the requirements of [the rules] have been met and deciding those issues on the merits." Cook v. Rockwell Intern. Corp., supra, 151 F.R.D. 381.
I. Numerosity
The plaintiffs' motion for certification defines the proposed class as all persons who now own or have owned, at any time after July 9, 1993, residential property in the Town of New Milford within the geographical boundary area of the proposed class. According to the testimony presented at the hearing this would include a class of approximately 800 people or more.
"There is no "magic number" that automatically fulfills the numerosity requirement of the rule . . . because numerosity is tied to the impracticality of joinder under the particular circumstances of the case. . . . (Citations omitted.) Arduini v.Automobile Ins. Co. of Hartford, Connecticut, supra, 23 Conn. App. 590; see also Campbell v. New Milford Board of Education,36 Conn. Sup. 357, 360, 423 A.2d 900 (1980) ("There is no mechanical test for determining whether in a particular case the class is so numerous that joinder of all members is impracticable."). "The issue is one for the court to be resolved in light of the facts and circumstances of the case. . . . Mere speculation or conclusory allegations as to how numerous the purported class is will not justify certification. . . . The plaintiff must show some evidence or a reasonable estimate of the number of class members. . . ." (Citations omitted.) Campbell v. New MilfordBoard of Education, supra, 36 Conn. Sup. 360. CT Page 9969
The plaintiffs' evidence is that the class consists of approximately 800 or more property owners.[4] Mr. Davenport, one of the proposed class representatives, testified that he spoke to hundreds of property owners to determine the scope and size of the class. He also testified that he met with Town officials and other proposed representatives of the class and visited over 100 properties. From these visits and meetings he determined that there are hundreds of people prepared to bring suit against the defendants based on similar complaints regarding the landfill. Mr. Davenport was the director and a member of Willow Condominium Association, and while a resident at 72 Will Springs found that the odors, dust, garbage, debris, sea gulls and noise were prevalent through out the condominium complex. The condominium complex, which is within the proposed class boundary, consists of 332 units. Likewise, the other plaintiffs and proposed representatives of the class testified that they interviewed hundreds of property owners in the proposed class area and found that hundreds of people are prepared to bring law suits against the defendant based on similar complaints regarding the landfill. "The impracticality of joining such a large number of plaintiffs is obvious. Management of such a large action would be quite burdensome and could lead to unnecessary delays."Campbell v. New Milford Board of Education, supra, 36 Conn. Sup. 360 (the proposed class in was made up of between 450 and 800 people). Accordingly, the plaintiffs have satisfied the numerosity requirement of Practice Book § 87.
II. Commonality
Commonality, the second requirement, "does not require that all the questions of law or fact raised by the dispute be common; nor does it establish any quantitative or qualitative test of commonality." Cook v. Rockwell International Corporation, supra,151 F.R.D. 384. Rather, commonality "only requires that some common questions exist, not that they predominate." Campbell v.New Milford Board of Education, supra, 36 Conn. Sup. 362. Commonality merely requires "that the class claims arise out of the same legal or remedial theory." Johns v. DeLeonardis,145 F.R.D. 480, 483 (N.D. Ill. 1992). "Where the defendant engages in a single course of conduct that results in injury to the class as whole, a common core of operative facts is usually present." Id.
The plaintiffs have identified common questions of law and fact. Common questions include whether the defendants operation of the New Milford landfill involved negligent nuisance, CT Page 9970 absolute, intentional nuisance, nuisance based on a statutory violation, reckless misconduct and violations of CUTPA. To be more specific, some of the common legal questions include: whether the landfill was operated by defendants in an unreasonable or unlawful manner; whether the defendants' actions created a nuisance and were those actions intentional; whether the actions of the defendant in the operation and use of the landfill were willful, wanton or reckless; whether the actions of the defendants in the use and operation of the landfill violated CUTPA.
The defendants argue that proof with respect to causation, injuries and damages would vary from class member to class member. Because of these differences, the defendants claim that the requirements of commonality and typicality cannot be met. "No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action. Consequently, the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." Sterling v. Velsicol Chemical Corp.,855 F.2d 1188, 1197 (6th Cir. 1988) (a class was certified for personal injury and property damage for persons near a landfill after chemicals leaked into a water supply).
The central issue of liability in the present case centers around the defendants' operation of the landfill. There are common questions of law and fact and merely asserting that the extent of injury or the amount of damages differs between members of the class will not, as discussed above, defeat certification of a class action. "The fact that there may have to be an individual examination on the issue of damages has never been held to bar certification of class." Campbell v. New MilfordBoard of Education, supra, 36 Conn. Sup. 362. Almost identical evidence would be required to establish the causal connection, if any, between the type of injuries plaintiffs allegedly suffered and the defendants' liability. "The single major issue distinguishing the class members is the nature and amount of damages, if any, that each sustained. To this extent, a class action in the instant case avoid[s] duplication of judicial effort and prevent[s] separate actions from reaching inconsistent results with similar, if not identical facts." Sterling v.Velsicol Chemical Corporation, supra, 855 F.2d 1197 ("The district court clearly did not abuse its discretion in certifying CT Page 9971 [the] action as a . . . class action.") Because the court finds common issues of law and fact presented in this case, the requirement of commonality is met.
III. Typicality
The third requirement, typicality, "provides that a class action may be maintained only if the claims or defenses of the representative parties are typical of the claims or defenses of the class. So long as there is a nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class, the typicality requirement is satisfied. . . . (Citations omitted.) Cook v. RockwellInternational Corp., supra, 151 F.R.D. 385 (1993). Typicality is satisfied when the representative party's claim "arises out of the same event or practice that gives rise to the claims of the class members and is based on the same legal or remedial theory."Campbell v. New Milford Board of Education, 36 Conn. Sup. supra at 365. In the present case, the practices that give rise to the claims of the class members is the operation of the landfill from July 1993 to the present. Additionally, the claims of the class are based on the same legal theories.
"[D]ifferences in the situation of each plaintiff or each class member do not necessarily defeat typicality: The harm suffered by the named plaintiffs may differ in degree from that suffered by other members of the class so long as the harm suffered is of the same type." (Internal quotation marks omitted.) Boggs v. Divested Atomic Corp., 141 F.R.D. 58, 65
(S.D. Ohio 1991). Each and every class member and those persons supporting class certification testified that operation of the landfill created noxious odors, noise, dust, sea gulls, vermin, and rodents. Consistent testimony was also presented regarding the resulting interference with the use and enjoyment of their property. Although the extent to which each proposed representative member of the class suffered harm differed from one person to the next, this will not defeat class action certification. The claims are typical of all members, notwithstanding the fact that each named plaintiff may verbalize his or her subjective harm differently or have a different level of awareness of the odors or inability to use and enjoy his or her property. See, Boggs v. Divested Atomic Corp., supra,141 F.R.D. 66.
Typicality is satisfied where, as in this case, there is a CT Page 9972 connection between the claims of the class representative and the common questions of fact or law that unite the class. Cook v.Rockwell International Corp., supra, 151 F.R.D. 385. The representatives claims are only required to be typical of not identical with the claims of other class members. "When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." United Brotherhood of Carpenters and Joinersof America Local 899 v. Phoenix Associates, 152 F.R.D. 518, 522
(S.D.W. Va. 1994).
IV. Adequacy
Adequacy of representation, the fourth and final requirement of Practice Book § 87, is measured by two criteria. "First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second the class members must not have interests that are antagonistic to one another." In Re DrexelBurnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992), cert. denied, 507 U.S. ___, 113 S.Ct. 1070, 122 L.Ed.2d 497. The defendants do not dispute that the first prong of the test is met. Instead the focus of their argument is that the interests of the class members are antagonistic.
The defendants assert that the deposition testimony of the class representatives indicated that they wanted the height of the landfill to be lowered. In the argument of the defendants they assert that the plaintiffs in this action seek damages from the disruption of the landfill that will result if the landfill is indeed lowered. Furthermore, the defendants argue that "removing waste from the landfill may produce adverse conditions for a wide zone of proposed class members who currently do not experience odors of noise, and arguably have never experienced those problems." (Defendants' Memorandum in Support of Objection to Plaintiffs' Motion for Certification as Class Action p. 17.) The defendants contend that "the position of the class representatives that the landfill should be disrupted is diametrically opposed to the interests of the vast majority of the proposed class members." (Id.) The court agrees with the position of the plaintiffs which is simply that the class representatives opinions on whether the landfill should be lowered is irrelevant.
The court, Gill, J., issued injunctive relief to the Town of New Milford in the case of Brickley v. Waste Management ofCT Page 9973Connecticut, Inc., Superior Court, judicial district of Litchfield, Docket No. 060522 (November 7, 1995, Gill, J.), and ordered clean closure of the landfill.[5] Under the injunction, the defendant was ordered to bring the landfill into compliance with the zoning regulations by lowering the height of the landfill to 90 feet. This was to be done with the approval and authority of the Department of Environmental Protection. The plaintiffs position on lowering the height of the landfill will not in any way change what has already been ordered. The plaintiffs, however, are forewarned that any damages they may incur as a result of the defendants removal of waste in excess of the zoning regulations is not to be made part of this action. Furthermore, it is quite possible that the decision of the superior court in Brickley, supra, will not be upheld or the DEP will determine that removal of the garbage in excess of 90 feet will cause more harm than good and simply order clean closure. These issues, however, are of no moment in this case.
"[C]lass representatives must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation." Diduck v. Kraszycki SonsContractors, Inc., 149 F.R.D. 55, 59-60 (S.D.N.Y. 1993). The plaintiffs demonstrated that they to possess these attributes. For the reasons stated, the court concludes that the plaintiffs will fairly and adequately represent the interests of the class.
The court notes that the defendants also attack the plaintiffs suitability based on the financial resources of the plaintiffs. In other words, the defendants posit that the plaintiffs must possess adequate resources for the prosection of the claim. The defendants rely on the case of Ferraro v. GeneralMotors Corp., 105 F.R.D. 429 (1984), wherein the court stated "[f]inancial ability to maintain the class in a manner protecting the rights of a class members, who are themselves entitled to vigorous representation, is in general terms a relevant consideration when plaintiff seeks to demonstrate adequacy as a class representative." Id., 431. The court, however, also stated that "whether the named representative is a millionaire or a pauper, the proper focus of financial discovery is narrow, because the fundamental concern is whether the expenses of litigation will be paid, by plaintiff or others, as they are incurred so that the ligation can be pursued vigorously and in orderly fashion." Id. 432. The Ferraro court notes that "[t]he depth of permissible inquiry into plaintiff's financial CT Page 9974 circumstances is . . . a matter of dispute in the federal courts." Id. Some federal courts support the concept of detailed financial ability while others do not. Id. This court allowed limited probing on the issue of financial ability and there was a representation in court by plaintiffs' counsel that costs would be advanced by the firm. The court directs plaintiffs' counsel to furnish a copy of the fee agreement to the defendants. Thus the issue of adequacy in the present case focuses on the agreement of counsel to advance fees and the willingness of class representatives to be liable for repayment. See Ferraro v.General Motors Corp., supra, 105 F.R.D. 433-34. Counsel represented a willingness to advance fees and the representatives testified that they would be willing to pay their proportional share of costs. Based on the representations made and subject plaintiffs' counsel providing a copy of the fee agreement to defendants' counsel, the court finds that the class representatives will adequately represent the class even on a financial level.
V. Predominance Of Questions Of Law Or Fact
Having concluded that all four requirements of Practice Book § 87 have been satisfied, the court must next decide whether the same situation exists with respect to the two components of Practice Book § 88. As previously stated, Practice Book § 88 requires a finding by the court "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Id.
"Unlike the requirement of Practice Book, 1978, § 87(2), that common issues exist, this requirement involves the stricter standard that the common issues predominate over the individual issues. See Wilensky v. Olympic Airways, S.A., 73 F.R.D. 473, 477
(E.D. Pa.); Wright Miller, op. cit., § 1778, p. 52. The key to the requirement, however, is that the common issues predominate, not that they be dispositive of the action; In re Sugar IndustryAntitrust Litigation, 73 F.R.D. 322, 345 (E.D. Pa.); so that the fact that some individual issues may remain after the common issues are resolved is unimportant. Dolgow v. Anderson,43 F.R.D. 472, 490 (E.D. N.Y.), rev'd, 438 F.2d 825 (2d Cir.). Thus, "predominance" does not require a complete unanimity of common questions as to all class members. Cohen v. Uniroyal, Inc.,77 F.R.D. 685, 695 (E.D. Pa.); Chevalier v. Baird Savings Assn., 72 CT Page 9975 F.R.D. 140, 150 (E.D. Pa.)." Campbell v. New Milford Board ofEducation, supra, 36 Conn. Sup. 368-69.
Previously discussed was the existence of several common questions, namely: whether the landfill was operated by defendants in an unreasonable or unlawful manner; whether the defendants' actions created a nuisance and were those actions intentional; whether the actions of the defendant in the operation and use of the landfill were willful, wanton or reckless; whether the actions of the defendants in the use and operation of the landfill violated CUTPA. These questions are controlling in the litigation. "[W]hen so many common issues exist, it is immaterial that there may be individual questions relating to damages[.]" Campbell v. New Milford Board ofEducation, supra, 36 Conn. Sup. 369. The court concludes, therefore, that the common issues predominate over any individual issues that may exist. Because common issues have been found to predominate, a class action appears to be the most expeditious way to resolve the litigation.
VI. Superiority of Class Action
"The reasons for the superiority of class actions over individual suits were set forth by the court in [In re Sugar Industry Antitrust Litigation, 73 F.R.D. 322, 358 (E.D. Pa.)]: (1) the alleged economic injuries to many proposed class members are too minuscule to justify their independent commencement of actions; (2) the proliferation of lawsuits that otherwise would result from the alleged pervasive conspiracy absent class actions will be minimized; (3) duplicative efforts by the judiciary and the litigants will be eliminated; (4) duplicative litigation expenses and attorneys' fees will be prevented; (5) defendants will be relieved from the burden of defending numerous lawsuits geographically scattered throughout the nation; and (6) inconsistent judicial decisions will be avoided." Campbell v. NewMilford Board of Education, supra, 36 Conn. Sup. 370. All these reasons, with the exception of number five, are applicable in the present case. Further, the superiority of a class action over individual joinder was previously discussed with the court concluding that the parties are so numerous that joinder is impracticable.
Aside from joinder, there appears to be no way to proceed in multiparty litigation except by a class action. The other alternative mentioned in Campbell v. New Milford Board ofCT Page 9976Education, supra 36 Conn. Sup. 371 is the "test case" approach which was adopted by the Third Circuit in Katz v. Carte BlancheCorp., 496 F.2d 747 (3d Cir. 1970), cert. denied 419 U.S. 885,95 S.Ct. 152, 42 L.Ed.2d 125 (1974). Following this approach, the class was certified and the class action stayed while one litigant went forward on the issue of liability. The decision contains several dissents and it is doubtful that it comports with Connecticut procedure. Under General Statutes § 52-105
numerous parties may be represented by one. This has been construed as permitting a class action. See Jones v. Foote,165 Conn. 516, 520, 338 A.2d 467 (1973).
It is the conclusion of this court that both aspects of Practice Book § 88 have been established.
VII. A Class Must Exist
"Although not expressly required by [Practice Book §§ 87 and 88], it is obvious that the party seeking certification must establish that an identifiable class exists . . . Courts which have addressed his issue have determined that [t]he most important distinguishing characteristic of [a class] . . . is that . . . [its] scope is defined by the activities of the defendants." (Internal quotation marks omitted; citation marks omitted.) Daigle v. Shell Oil Company, 133 F.R.D. 600, 602
(D. Colo. 1990).
In the present case, the plaintiffs commenced this action on their own behalf and on behalf of a purported class consisting of all persons who own or have owned property since 1993 within the following boundaries:
 (a) On the North: from the point where Candlewood Lake Road North meets Jerusalem Road, from Jerusalem road east to Sunny Valley Road, Sunny Valley Road east and then north, including Caldwell Drive to Sunny Valley Road to Route 7;
 (b) On the East: Route 7 and Pickett District Road to Lanesville Road;
 (c) On the South: Lanesville Road west across Route 7 to Sullivan Road to Old Town Park Road and continuing on Old Town Park Road and continuing on Old Town Park Road to where it intersects with Candlewood Lake Road North;
CT Page 9977
 (d) On the West: from the point where Old Town Park Road meets Candlewood Lake Road North to the point where it meets Jerusalem Road.
The defendants, in reliance on Daigle v. Shell Oil Company,
supra, 133 F.R.D. 600, argue that the above boundary lines are nothing more than arbitrary lines drawn on a map without any logical connection to the defendants' activities in the operation of the landfill. In Daigle, however, the court found that the scope of the proposed class was not defined by defendants' activities. Id., 602-603. In the present case, the court finds that the scope of the proposed class is defined by the defendants' activities.
The class is limited to owners or former owners of property within the boundary lines between July 1993 and the present. The reason for the temporal classification stems from the allegations in the complaint regarding the defendants increase in disposal of waste while the case of Bauer v. Waste Management of Connecticut,Inc., supra, was on appeal to the Connecticut Supreme Court. Approximately "1.5 million cubic yards of waste that is estimated to have accumulated in violation of the zoning ordinance[,]" during the time period that the case was on appeal. Brickley v.Waste Management of Connecticut. Inc., Superior Court, judicial district of Litchfield, Docket No. 060522 (March 7, 1995, Gill, J.). "Between 1993 when the appeal was taken and September 19, 1995, when [the] court issued a temporary injunction to prevent further disposal of waste at the New Milford facility, the defendant almost tripled the amount of waste being deposited in New Milford on a yearly basis." Id. "Testimony at trial indicated that Waste Management increased its disposal of 190,494 tons in 1989 to 581,832 tons in 1994, with a projected 573,200 tons in 1995. . . . Additionally, Waste Management continued to dispose of waste at this facility even after the Supreme Court ruled that the zoning ordinance was valid. Until . . . a temporary injunction [issued], Waste Management deposited approximately 55,824 tons of waste above 90 feet after the Supreme Court's July 11, 1995 decision. It was . . . [suggested] that this amount of waste is equal to all the trash generated in the State of Connecticut for eight days." Id.
The testimony of the proposed representatives of the class and potential members of the class indicated that the geographical boundary lines defining the class include property owners living within an area that was reasonably affected by the CT Page 9978 defendants' activities in the landfill. In Warner v. WasteManagement, Inc., 521 N.E.2d 1091, 1096, the court upheld the trial court's certification of a class consisting of all persons "who lived or owned real property within a five mile radius of" the landfill.[6] Id. Likewise, in Boggs v. Divested AtomicCorp., 141 F.R.D. 58 (S.D. Ohio 1991), the court granted certification to a class of "all persons living within a six mile radius of the boundaries of the . . . Plant whose persons or property [were] exposed to radioactive or hazardous wastes released from the plant." Id. In the present case, the defendants argument is focused on the effect and amount of odors, noise, etc rather than on the fact that these conditions existed. The court concludes that plaintiffs' choice of temporal and geographical lines to define class members bears a reasonable relationship to the testimony presented up to this point and that the definition of the class is sufficiently definite. See Boggs v. DivestedAtomic Corp, supra, 141 F.R.D. 62.
Additionally, "[t]he requirement that the be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member. This means that the class must not be defined so broadly that it encompasses individuals who have little connection with the claim being litigated; rather, it must be restricted to individuals who are raising the same claims or defenses as the representative. . . ." (Citations omitted.) Rappaport v. Katz, 62 F.R.D. 512, 513
(S.D.N.Y. 1974).
"A court faced with a certification issue must be mindful that certification is conditional and that once a class is certified it may be altered, expanded, or subdivided, or the certification may be vacated, as the case progresses toward resolution on the merits. . . . Because class certification is subject to later modification, a court should err in favor of, not against allowing maintenance of the class action." (Citations omitted.) Daigle v. Shell Oil Company, supra, 133 F.R.D. 602.
For the reasons discussed above, the court finds that there is a class.
XIII. The Class Representative Must Be A Member of That Class
In the present case, each proposed representative member of the class testified at the October 31, 1996 hearing. Every CT Page 9979 proposed representative member testified that he or she either currently own property within the geographical boundary or owned property within the geographical boundary during the time period from July 1993 to the present. As such, there is no question on this issue and the court finds that the proposed class representatives are members of the class.
IX. Order
1. The class is certified in the following terms: That class of persons of persons who now own or have owned, at any time after July 9, 1993, residential property in the Town of New Milford, within the area encompassed by the following boundaries:
 (a) On the North: from the point where Candlewood Lake Road North meets Jerusalem Road, from Jerusalem road east to Sunny Valley Road, Sunny Valley Road east and then north, including Caldwell Drive to Sunny Valley Road to Route 7;
 (b) On the East: Route 7 and Pickett District Road to Lanesville Road;
 (c) On the South: Lanesville Road west across Route 7 to Sullivan Road to Old Town Park Road and continuing on Old Town Park Road and continuing on Old Town Park Road to where it intersects with Candlewood Lake Road North;
 (d) On the West: from the point where Old Town Park Road meets Candlewood Lake Road North to the point where it meets Jerusalem Road.
Street boundaries included within the above description shall include residential property with frontage on either side of such street. (See also Exhibit A attached hereto.)
2. Notice of the class action suit shall be given by registered or certified mail return receipt requested to every class member for whom an address is known. In addition notice by publication shall be placed once in the Danbury News Times and the New Milford Times.
3. The notice shall advise each class member that (i) the court will exclude a member from the class if the member so requests by a specified date; (ii) the judgment, whether favorable or not, will include all members who do not request to CT Page 9980 be excluded; and (iii) any member who does not request to be excluded may, if the member desires, enter an appearance through counsel.
4. Counsel for the plaintiffs shall prepare the notice and submit it to counsel for the defendants and the court on or before December 16, 1996. If counsel for the defendants desires to be heard on any item in the notice he shall arrange with the clerk for a hearing on either December 23 or December 30, 1996.
5. The court directs plaintiffs' counsel to furnish a copy of the fee agreement to defendants' counsel.
The court's decision to grant class action status is done mindful that certification is conditional and that the class may be altered, expanded, or subdivided or certification vacated as the case progresses toward resolution.
For the foregoing reasons, the court grants the plaintiffs' motion for certification of the class as set forth above.
PICKETT, J.
[EDITORS' NOTE: EXHIBIT A IS ELECTRONICALLY NON-TRANSFERRABLE.]